SMITH et al. v. ANDERSON et al.

(In Banc. May 25, 1942.)

[8 So. (2d) 251. No. 34998.]

Henry & Barbour, of Yazoo City, for appellants.

**R. R. Norquist**, of Yazoo City, for appellees.

**McGehee, J.**, delivered the opinion of the court.

The appellants seek to have canceled as clouds upon their title to an undivided interest in more than 400 acres of land in Yazoo County, Mississippi, certain tax deeds which purported to convey all of the land to Dr. D. Seward pursuant to tax sale thereof made on August 7, 1933, for the unpaid taxes thereon for the year 1932; also, a deed executed by Seward in favor of the appellee J. R. Anderson, Jr., on August 10, 1936, conveying the land to him for a cash consideration of $259.66, representing the amount paid by Seward at the tax sale, together with damages, interest and costs, and the additional taxes accruing during the three year period of redemption. The tax sale being void for want of power on the part of the tax collector to sell lands for taxes in August of that year, as held by this court in the recent case of Smith v. Hendrix, 181 Miss. 229, 178 So. 819, the appellants were entitled to a decree canceling the conveyances as prayed for unless the affirmative defense of three years' actual occupation under the tax title, as provided for under Section 2288, Code of 1930, for acquiring title, after three years from the date of the sale, was established by the proof. The court below held that such fact was shown, and dismissed the bill of complaint, hence the complainants appeal.

The appellants and the father of the appellee, J. R. Anderson, Jr., had been tenants in common of 311 acres of the land for about 20 years prior to the date of the tax sale, and he had the entire management and control thereof for the purpose of collecting any rents accruing thereon each year and paying the taxes, and with the right on the part of the other tenants in common to receive such distribution of the rents in excess of the taxes as he should deem right and proper, without any requirement for an accounting in that behalf. He performed such agreement until the year 1932, paying the taxes

every year and making small remittances to the complainants during only such years as he felt justified in doing so. This 311 acre tract of land was inherited from Mrs. Francis Anderson by her four children, Mrs. M. E. Grissom, now deceased, who was the mother of complainants, and Clarence, Henry and J. R. Anderson, Sr., as tenants in common, and it has remained undivided. During the early part of the year 1932, Clarence Anderson, who had never married, died, seized and possessed of his interest therein, and also of a one-half interest in 102 acres as a tenant in common with J. R. Anderson, Sr., whereupon the complainants became the owners of a one-third interest in the 311 acre tract and a one-sixth interest in the 102 acres, as tenants in common with J. R. Anderson, Sr., and others. The wife of J. R. Anderson, Sr., also died in the early part of 1932, when their son, Hal Anderson, moved into the house with his father, and was permitted to take full charge and control of the said 311 acre tract, renting out such portion thereof as was cultivatible, collecting all rents derived therefrom, amounting to between $200 and $350 per year, including the subsidies received from the Federal Government; under the obligation to pay the taxes thereon, which his father understood was being done from year to year, until he learned during the year 1936, after his other son, J. R. Anderson, Jr., had purchased both tracts of land from Dr. D. Seward, that all of the land had been sold for the unpaid taxes thereon for the year 1932, amounting to approximately $90.

It also appears that the 102 acre tract was leased by J. R. Anderson, Sr., during the year 1932 to one Smith, who paid him approximately $100 as rent thereon; that beginning with the year 1933, J. R. Anderson, Sr., rented this tract to Sam Hood for one-fourth of the crops, amounting in value to more than $100 per year, and continued to do so every year until after the filing of this suit on May 16, 1940, receiving the rents derived

therefrom in his own right, as he had done prior to the tax sale of August 7, 1933. Likewise, his son, Hal Anderson, who had the full management and control of the 311 acre tract continued to receive the rents and subsidies from it from 1933 until after the filing of this suit, the same as he had done as to the rents in 1932, prior to the tax sale. Hal Anderson did not live on this tract, but continued to live in the house with his father, according to their testimony. But if we should assume that Hal Anderson and his father actually occupied the two tracts of land in question, following the purchase thereof by J. R. Anderson, Jr., from Dr. Seward three days after the alleged tax title matured, nevertheless, there was no change whatever in their physical possession or occupancy after the tax titles matured in 1936 as compared to that exercised by them prior thereto and before the tax sale occurred. During the period allowed for redemption they were in possession of the lands by virtue of the agreement existing between the complainants and J. R. Anderson, Sr., as tenants in common, whereby he was to collect the rents and pay the taxes every year, and it is not contended that anything occurred that would give notice to the complainants that they were claiming to hold the lands otherwise, either before or after the expiration of the period of redemption. In fact, during the three years of alleged actual occupation following the maturity of the tax titles, J. R. Anderson, Sr., made some small remittances to the complainants of rents which had previously accrued, and without informing them of any change in the former status of the title. Moreover, one of the complainants visited J. R. Anderson, Sr., from time to time during the three years following the period of redemption, and nothing was brought to her attention to indicate that J. R. Anderson, Jr., was claiming the land under the alleged tax title, or that the lands had ever been sold for taxes. J. R. Anderson, Jr., testified that he had never been on the land at any time subsequent

to the tax sale. He was asked whether he had rented the lands to Hal and his father, and replied: "Rented it for the taxes and up-keep. I had put out four years' taxes and I didn't want to put it out. I didn't want Dr. Seward to have it—I didn't want the heirs to lose it, and I thought if anybody in Yazoo County was entitled to it I was." He was then asked, "Did they ever pay you back any of the money paid to Dr. Seward?" His answer was: "No, sir. I have got it on the book. I think I have got it listed to the estate. I have got a record of it, I was out so much money." Question: "Which estate?" Answer: "Anderson estate."

He further testified that he didn't know whether Hal and his father paid the taxes or not after he purchased the land from Dr. Seward and turned it over to them. He had not received any rents or profits from the land since his purchase, and had no agreement that he was to do so, but says that he turned it over to them, and told them that he didn't intend to "put out another nickel taxes, up-keep or anything else" on it. It was shown without dispute that thereafter Hal Anderson, and not the appellee J. R. Anderson, Jr., rented out the 311 acres each year, received all the rents and profits derived therefrom in his own right, and that J. R. Anderson, Sr., did likewise as to the 102 acres; and, as heretofore stated, he was not sufficiently interested to ascertain whether or not they were keeping the taxes paid from year to year after he bought the land from Dr. Seward, as they had agreed to do.

It was during the period allowed for redemption of the land from the tax sale, that the appellee, J. R. Anderson, Jr., learned that Dr. Seward had purchased the same and went to see him a few days before the tax title matured and obtained an agreement that the title should mature in the tax purchaser and then be conveyed to said appellee. He did not inform his father that the lands had been purchased by Dr. Seward or that he was

about to lose his interest as a tenant in common of the lands by virtue of any tax sale. That is to say, he either intended that his purchase from Dr. Seward should be for the benefit of his father and his other relatives who were interested in these lands or intended to acquire the title for himself to the exclusion of all of them, including his father. He waited until after he had obtained his deed from Dr. Seward to all of this 413 acres of land, at a price less than its annual rental, to inform his father that it had been sold for taxes, and without affording him the opportunity to redeem the same for the benefit of himself and the other tenants in common, unless it be said that he intended that his purchase from Dr. Seward should be for their benefit. One would prefer to believe that he did thus intend, but he has chosen to assert the contrary.

It is true that J. R. Anderson, Jr., was under no more legal obligation than was Dr. Seward to inform the former owners, including his father, that their lands had been sold for taxes, but having acquired a void tax title, the question now before us for decision is whether his alleged actual occupancy of the land for three years under the matured tax title was required to be of such character, under Section 2288, Code of 1930, as to afford to the former owners the means of obtaining knowledge that the nature and character of the possession being exercised during that time was different from the occupancy or possession theretofore exercised by his father and brother. It was held in the case of Leavenworth v. Reeves, 106 Miss. 722, 64 So. 660, that the possession of land to be adverse in the legal sense must be evidenced by such acts as are calculated to arrest the attention of the true owner and indicate to him that the land is being appropriated to the use of another under claim of ownership; the court therein quoting with approval from the case of Ford v. Wilson, 35 Miss. 490, 504, 72 Am. Dec. 137, and saying that the character of occupation required is such "that

the owner may be thereby notified to assert his title."
It is true that in the Leavenworth case the question
involved was whether a title had been acquired by
adverse possession under what is now Section 2287,
Code of 1930, providing that ten years adverse pos-
session gives title; but in the case of Hamner v. Yazoo-
Delta Lumber Co., 100 Miss. 349, 56 So. 466, 489, which
involved the question of whether a good title could be
acquired by three years' actual occupation of land under
a void tax title, after the expiration of the period of
redemption, the court construed the applicable three year
statute, Section 2735, Code of 1892, containing the same
provisions as that now relied upon by the appellees, Sec-
tion 2288, Code of 1930, and said that the statute is noth-
ing more or less than a statute of limitation, "the
essential, vital instrumentality, which gives the perfect,
unassailable title, being not a sale for taxes, but posses-
sion under the deed." The learned opinion in that case
further states: "We accentuate that the possession is
what confers ownership under our general statute of
limitations; in fact, the paper title, or color of title, does
not augment or enlarge the claim of ownership, the owner-
ship being referred alone to the possession. Under this
ten-year statute it is the adverse possession that confers
title or ownership. The same is true as to the [three
year] statute under consideration." Further, the court
quoted the language employed in the case of Dingey v.
Paxton, 60 Miss. 1038, to the effect that: "One who is in
the actual or constructive possession of his lands, and
who has the right of possession of the property, needs
no action to enforce his rights. He is already in the en-
joyment of all that the law can give him, and cannot be
disturbed in such enjoyment, except by 'due course of
law.'" See also Russell Inv. Corporation v. Russell, 182
Miss. 385, 178 So. 815, 182 So. 102, and Grant v. Mont-
gomery et al., 193 Miss. 175, 5 So. (2d) 491, wherein it
was necessary for the court to limit the application of

the statute of limitation contained in Chapter 196, Laws of 1934, in order to uphold its constitutionality in harmony with the principles announced in Dingey v. Paxton, 60 Miss. 1038, by holding that the act would avail the tax purchaser nothing where the former owner has remained in actual possession, either by himself or tenant, after the sale, or in a case where, if the former owner does not remain in actual possession, there has been no adverse occupancy or possession by the purchaser at the tax sale, its patentee or subsequent vendee for the period prescribed. And in the Grant case, supra, it was held that until a person's possession of land is invaded or disturbed by the holder of a void tax title, the statute requiring an action attacking the validity of a tax sale of land does not begin to run.

Even though it is true that one relying upon Section 2288, Code of 1930, to acquire a title through a void tax sale by means of actual occupation of the land for three years, after the expiration of the period of redemption, is not required to notify the former owners as to the fact of the claim and occupation thereunder, is it not also true that he must do something to denote a change in the character of the possession as compared with that preceding the commencement of the three years' actual occupation relied on, such as would afford the former owner the means of acquiring knowledge that the land is being appropriated to his use under claim of ownership? In the instant case, the former owners continued in possession of the land through Hal Anderson and one of their tenants in common, J. R. Anderson, Sr., throughout the period of redemption, and so far as they knew, or had reason to believe, they were likewise still in the exclusive possession thereof through these same agents or tenants during the entire three years of alleged actual occupation by J. R. Anderson, Jr., through the same agents or tenants, who did not work the land but dealt with it as landlords as they had done prior to said period. While a claimant

under a void tax title may not be required to change the tenants on a farm in order to put this three year statute in operation, he is not entitled to claim the benefit of the statute where he knows that the alleged change in actual occupation is being successfully and skillfully concealed from the former owner by reason of the fact that the agents or tenants of the former owner are allowed to rent out the land and exercise full management and control of the property in the same manner as they had done prior to the tax sale. Here, the holder of the void tax title does not claim to have ever gone on the land or to have exercised a single act of ownership or control over it after his purchase, except that he says he turned it over to his father and brother shortly after his purchase from Dr. Seward and took no further interest in it. Regarding this single circumstance, the former owners neither had knowledge nor the means of acquiring knowledge. Had they examined the records and ascertained that the lands had been sold at the void tax sale, they would have found that the legal title remained in them, and that they still held the constructive possession of the land as an incident thereto; and if they had gone upon the land, as one of them did from time to time during the three year period relied upon by the holder of the tax title, they would have found nothing to indicate that they were not also in the actual possession of the same through their tenant in common, J. R. Anderson, Sr., and Hal Anderson, as his agent. During the period of time involved, none of the complainants lived in the county where the lands are situated; and there is no conflict in the evidence as to any of the facts hereinbefore discussed as to what transpired.

Under Section 2287, Code of 1930, known as the "Ten Years Adverse Possession Statute," one may acquire title to land without actually occupying it, either himself or by tenant, but by merely cultivating, pasturing, cutting and selling timber, and other acts of ownership and

control over the same, but when the legislature later enacted Section 2288 of said Code and shortened the period of limitation to only three years, permitting the holder of a void tax title to acquire a good title to land against the former owner, holding the legal title, it was required that there be actual occupancy for three years, and not the mere exercise of acts of ownership and control such as would give title by adverse possession without actual occupation. We are of the opinion that the legislature thus intended that the possession of the holder of the tax title should be of such character and evidenced by such change of occupancy and acts of ownership as to leave no doubt as to whether the former owner would be thereby afforded the means of becoming advised that the title was being claimed pursuant to the tax sale.

From the foregoing views, it follows that the complainants were entitled to have the conveyances hereinbefore referred to cancelled as clouds upon their undivided interests in the lands in controversy. The cause will therefore be reversed and a decree rendered here accordingly.

Reversed and judgment here for the appellants.

### Concurring Opinion.

**Smith, C. J.**, delivered a specially concurring opinion.

I concur in holding that the appellee, J. R. Anderson, Jr., was not in the actual occupation of this land, and consequently Section 2288, Code of 1930, did not come into operation.

The words "actual occupation" as used in Section 2288, mean "actual possession and control," and since the land under that Section must be "held under a conveyance by a tax collector," the actual occupation required is the equivalent of and means the same thing as the "actual adverse possession" required by Section 2287, Code of 1930. I do not concur, therefore, in the

holding of the main opinion that actual possession and control of land sufficient to evidence adverse possession under Section 2287 of the Code is insufficient to evidence actual occupancy thereof under Section 2288. Of course, possession under either statute must be of such character as to arrest attention and indicate that the possession is under a claim of ownership.