MISSISSIPPI INDUSTRIES FOR THE BLIND, et al. *v.* JACKSON

No. 40500          May 6, 1957          95 So. 2d 109

*Gordon & Gordon,* Liberty; *Henley, Jones & Woodliff,* Hazlehurst, for appellants.

*Roach & Jones,* McComb; *Lowery & Stratton,* Liberty, for appellee.

HALL, J.

On February 4, 1953, Mrs. Maude Sproles executed and delivered a deed of trust to Worth Jackson, which was not recorded until January 27, 1955. The scrivener made an error in the description of a part of the land intended to be covered by this deed of trust in that it described the S½ of SE¼ of NW¼ and NE¼, Section 28, Township 3, Range 3 E., containing 60 acres, more or less. Mrs. Sproles did own the S½ of the SE¼ of the NW¼ of said section and that land is not involved in this suit. She did not own the NE¼ of said section but owned only the NE¼ of the SW¼ of said section.

Mrs. Sproles was engaged in business in the City of Gloster in partnership with her son-in-law Sidney Hughes. On February 22, 1955, the Wesson Oil and Snowdrift Sales Company obtained a judgment against

Mrs. Sproles and Hughes in the amount of $530.16, plus interest and court costs, which judgment was duly enrolled upon the judgment roll of Amite County, Mississippi, on February 25, 1955. On June 14, 1955, a judgment was entered against Mrs. Sproles and Hughes in favor of Corenswet, Inc. in the amount of $326.32, plus interest and court costs, which judgment was duly enrolled on the same day. On August 18, 1955, Mississippi Industries for the Blind obtained a judgment against Mrs. Sproles and Hughes in the amount of $132.03, plus court costs, which was duly enrolled on August 30, 1955. On August 18, 1955, American Scales Manufacturing Company obtained a judgment against Mrs. Sproles and Hughes in the total amount of $210.75, which includes principal, interest, attorney's fees and court costs, and this was enrolled on August 30, 1955.

On September 8, 1955, executions were issued on the said judgments and the sheriff thereafter proceeded to give notice of sale under said executions. Prior to the proposed sale Worth Jackson filed a bill of complaint against Mrs. Maude Sproles and R. E. Smith who was the trustee in the deed of trust held by him, wherein he sought to reform the said deed of trust so as to change "NE¼" to read "NE¼ of SW¼". On November 12, 1955, Worth Jackson filed an amendment to his original bill of complaint wherein he made Ira Jenkins, Sheriff of the county, a defendant to the bill and prayed for an injunction restraining the sheriff from selling the land described as the NE¼ of the SW¼ and on the same date, by a fiat of the chancellor, a writ of injunction was ordered to be issued and was issued enjoining the sheriff and all other parties from selling the said forty acres of land under the executions.

On November 25, 1955, the said judgment creditors were permitted by the court to intervene as defendants to said bill of complaint, and on January 17, 1956, they

filed an answer to the bill of complaint and amendment, wherein, among other things, they charged that their rights as judgment creditors had already attached against said NE¼ of SW¼ and that it was too late to reform the deed of trust insofar as their rights were concerned and denied that the complainant was entitled to that relief, and prayed that the injunction issued against the sheriff be dissolved and that the sheriff be allowed his fees and expenses by reason of the wrongful suing out of the injunction.

Mrs. Sproles was seventy-seven years of age and unable to attend court because of illness but she testified by deposition as to the error which was made in the description of land in the deed of trust. She also testified that the deed of trust was given in good faith and for value. She did not know, and the record does not disclose, how much balance due is owing on the indebtedness secured by the deed of trust. By stipulation it was agreed that as between the complainant and Mrs. Sproles he was entitled to a reformation of the deed of trust but that the question of priority of liens of the judgment creditors and Worth Jackson were submitted to the court and it was further stipulated and agreed that the judgments in question are all regular and valid.

The chancellor entered a final decree reforming the deed of trust as prayed for, not only as against Mrs. Sproles but as against all of the judgment creditors, and he held "that sufficient record information existed to furnish the intervenors, defendants, with notice and to place them upon inquiry of the error of the scrivener and the rights and equities of the complainant Worth Jackson to assert and claim his lien on the forty acres of land levied upon for sale under the judgments."

■■ ■ Section 1555, Code of 1942, makes provision for a lien of an enrolled judgment upon all property of the defendant in the county where so enrolled and pro-

vides that the same shall have priority according to the order of enrollment in favor of the judgment creditor against the judgment debtor and all persons claiming the property under him after rendition of the judgment.

Section 867, Code of 1942, provides for the recording of conveyances and for priority, and Section 868, Code of 1942, provides that all deeds of trust and mortgages shall be void as to all creditors and subsequent purchasers for a valuable consideration without notice unless they be acknowledged or proved and lodged with the clerk of the chancery court of the proper county to be recorded in the same manner that other conveyances are required to be acknowledged or proved and recorded, and the said section further provides that a failure to file such instrument with the clerk for record shall prevent any claim of priority by the holder of such instrument over any similar recorded instrument affecting the same property in the absence of actual notice. Section 869, Code of 1942, provides that every deed of trust, etc. shall take effect as to all creditors only from the time when delivered to the clerk to be recorded and that no deed of trust which is unrecorded or has not been filed for record shall take precedence over any similar instrument affecting the same property which may be of record; and this section further provides that the priority thereof shall be governed by the priority in the time of the filing of the several instruments, in the absence of actual notice.

In the case of Simmons v. Huthchinson, 81 Miss. 351, (356, 357), 33 So. 21, this Court said: "Constructive notice arising from the record of a muniment of title is imputed to purchasers and creditors from a mere presumption of law, and it imputes only such knowledge as the instrument there recorded discloses, and not what a diligent inquiry into its meaning might disclose. The registration of an instrument is constructive notice to

the world of the contents of the paper there recorded,
or intended to be recorded, and of its particular con-
tents only, and it will have no operation or effect un-
less the original instrument correctly and sufficiently
describes the premises which are to be affected. The ef-
fect of the registration law is to impute to a purchaser
notice of what the instrument recorded, or intended to
be recorded, actually conveys, and has no operation in
the way of putting him upon inquiry as to what premises
were intended to be conveyed, unless they be substantial-
ly described therein. 2 Pomeroy's Equ. Jur., secs. 653,
654.

"There are authorities (notably, Patridge v. Smith,
2 Biss., 183, s. c., Fed. Cas., No. 10,787) which proceed
upon the idea that the registration of an instrument is
notice not only of its contents, but notice of every fact
to which an actual knowledge of its contents, diligently
pursued, would lead—that is, it puts upon the purchaser
the burden of hunting up what premises the instrument
intended to describe, where they are defectively or im-
perfectly described. But Vanderburg, J., in Bailey v.
Balpin, 40 Minn., 322 (41 N. W., 1054), says: 'Patridge
v. Smith goes further than is consistent with sound prin-
ciples or authority.' He, further, says the description,
to operate as constructive notice, must be sufficient to
identify the land; but, if it be correctly and sufficiently
described, mistakes in details will be helped by construc-
tion where the intention is reasonably clear from the
face of the record. In Bright v. Buckman (C. C.), 39
Fed., Toulmin, J. (page 247), says: 'The description of
the property upon which the mortgage is an incumbrance
must be such as reasonably to enable subsequent pur-
chasers to identify the land; otherwise the record of the
mortgage is not notice of an incumbrance upon it. If
the description in the mortgage is erroneous, and it is
apparent what the error is, the record is constructive no-

tice of the mortgage upon the lots intended to be described; but, if it is not apparent what the error is, then the record is not constructive notice.' "

It will be noted that the Court there said that constructive notice arising from the record of a muniment of title is imputed to purchasers and creditors from a mere presumption of law and imputes only such knowledge as the instrument there recorded discloses, and not what a diligent inquiry into the meaning might disclose. It will be noted that the chancellor wholly disregarded the foregoing statement and merely held that there was sufficient record information to furnish the creditors with notice or to place them upon inquiry of the error of the scrivener, and in this we think that he was in error.

In the case of Y. D. Lumber Company v. Refuge Cotton Oil Company, et al., 153 Miss. 302 (313), 120 So. 447, this Court said: "That the parties to that deed of trust may have intended to embrace the seed house therein is of no effect as against subsequent lien creditors, unless it contains a recital calculated to put a prudent person on notice thereof, and it contains no such recital. It is therefore of no efficacy as against the Y. D. Lumber Company and cannot be corrected as against it, for the reason that it acquired its lien on the seed house without notice of the Refuge Cotton Oil Company's claim thereto. Sack v. Gilmer Dry Goods Co., 149 Miss. 296, 115 So. 339; Goodbar Co. v. Dunn, 61 Miss. 619; Nugent v. Priebatsch, 61 Miss. 402; Mississippi Valley Co. v. Railroad, 58 Miss. 849."

In the case of Great Southern Land Company v. Valley Securities Company, 162 Miss. 120, (134-135), 137 So. 510, this Court said: "Our court held in Simmons v. Hutchinson, 81 Miss. 351, 33 So. 21, that constructive notice arising from the record of a muniment of title imputes only such knowledge as the instrument there recorded discloses, and not what diligent inquiry into

its meaning might disclose; that it is only constructive notice of the contents of the paper there recorded, or intended to be recorded, and its particular contents only, and will have no operation or effect as to any existing facts not described or pointed out in the recorded instrument.

"To the same effect is Sack v. Gilmer Dry Goods Co., 149 Miss. 296, 115 So. 339. See, further, 23 R. C. L., p. 216, section 79, and case notes."

In the case of Pan American Life Insurance Company, et al. v. Crymes, 169 Miss. 701, (717), 153 So. 803, this Court said: "* * and as to the third deed of trust there is a misdescription in that instrument by which the property there described is located six miles distant from the property intended to be conveyed. No knowledge is charged by the bill against the purchaser except the constructive notice furnished by the records; and it is well settled in this state that the constructive notice given by a recorded instrument is only of what is actually described in that instrument or which is to be perceived from that instrument and that instrument alone was intended to be described therein. It does not give notice of other deeds or instruments not referred to therein so as to be made a part thereof, nor does it give notice of a description which a diligent inquiry might have disclosed. Simmons v. Hutchinson, 81 Miss. 351, 33 So. 21; Sack v. Gilmer Dry Goods Co., 149 Miss. 296, 115 So. 339. In the latter case there were two deeds which, if taken together, would have disclosed the property intended, but the court held that so far as constructive notice is concerned each deed stood alone; and that is the case here before us. The court is of the opinion therefore that the demurrer of the life insurance company should have been sustained."

■■ From the foregoing authorities it seems clear to us that the decree of the chancellor denying priority

of the liens of the judgment creditors was clearly erroneous as a matter of law. There is no dispute as to the facts, and we do not think that the mere fact that the deed of trust recited that the land in question contained sixty acres more or less was sufficient to put the judgment creditors on notice that an entirely different tract of land was intended to be included therein. We do not think that it gave notice of a description which a diligent search of the records might have disclosed as to other lands belonging to Mrs. Sproles.

We are therefore of the opinion that the decree should be affirmed insofar only as it adjudged a reformation as against Mrs. Sproles but that it should be reversed insofar as the rights of the judgment creditors are concerned, and the cause should be remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed and remanded in part.

*McGehee, C. J., Lee, Arrington* and *Gillespie, JJ.*, concur.