452 So.2d 453 (1984)
H. Alex TROTTER
v.
GADDIS AND McLAURIN, INC., et al.
No. 54214.
Supreme Court of Mississippi.
May 30, 1984.
*454 Rufus Creekmore, Jackson, for appellant.
Henry M. Kendall, Jackson, for appellees.
Before ROY NOBLE LEE, P.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
This is a suit to remove clouds upon title to two tracts of real estate filed by Gaddis & McLaurin, Inc., and Gaddis Farms against H. Alex Trotter in the Hinds County Chancery Court. Trotter asserted a claim of title to the property by adverse possession, which claim the chancellor disallowed. As to Tract No. I, the chancellor *455 found that a written lease with an indefinite description from Gaddis to Trotter showed permissive use and precluded an adverse claim by Trotter. With respect to tract II, the chancellor held that sufficient notice had not been given to Gaddis Farms to effectively claim title by adverse possession.
We reverse and render as to both tracts of land.

I.
Appellant, Alex Trotter, is record title-holder to land in Western Hinds County described as:
The NE 1/4 of the SW 1/4 and ten (10) acres east side of the NW 1/4 of the SW 1/4 and three and one-half (3 1/2) acres north part of the SE 1/4 of the SW 1/4 and one (1) acre in the NE corner of the SW 1/4 of the SW 1/4 of Section 19, Township 7, Range 2 West, and being in Second Judicial District of Hinds County State of Mississippi.
This tract consisting of 54 1/2 acres was purchased by Stella Trotter from J.L. Gaddis, who was the common source of title between the Trotters and appellees, in 1916. The tract was later conveyed to George Trotter, father of appellant. In March, 1978, George Trotter conveyed his interest in the land to appellant, Alex Trotter. There is no dispute as to the 54 acres above described but it is the lands adjoining this 54 acre tract to the north and to the west that are the subject of this lawsuit.
Gaddis and McLaurin, Inc. owns record title to land along the northern boundary of the Trotter property described as:
The NW 1/4, less 3.85 acres in the NW corner, Section 19, Township 7 North, Range 2 West, Hinds County, Mississippi.
Gaddis Farms owns record title to land along the western boundary of the Trotter property described as:
All that part of the NW 1/4 of the SW 1/4 and 7.2 acres off the north end of the SW 1/4 of the SW 1/4, Section 19, Township 7 North, Range 2 West, Hinds County, Mississippi.
Shortly after Stella Trotter purchased the Trotter property from J.L. Gaddis, a barb wire fence was constructed through a wooded area along what was believed to be the northern and western boundaries of the property. Unknown to the parties, the fence actually encroached upon the Gaddis property to the north, later to become known as Gaddis And McLaurin property (Tract I), creating a 5.5 acre dispute. The fence also encroached upon Gaddis property to the west, later to become Gaddis Farms property (Tract II), creating a 9.8 acre dispute. The proof showed this fence to be continuous and nailed to trees and posts through the woods. The age of the fence was shown by tree overgrowth and maintenance of the fence through the years was evidenced by the addition of barbed wire strands in certain places.

II.

AS TO TRACT I
George Trotter was aware of the boundary fence his mother, Stella, had constructed in 1916, and he subsequently maintained that fence during the years he owned the property. The disputed property referred to as Tract I was cultivated and pastured by both him and his mother for over thirty years.
Lanzy Bates lived on the Tract I property as a tenant farmer from 1923 through 1926. In 1927 he moved back, and for six or seven additional years, he raised crops and pastured cows. After Bates left Trotter's employ, he continued to do part-time work on this disputed property.
Arthur Collins, a Trotter tenant farmer on Tract II from 1961 until 1966, was familiar with Tract I. He stated that this tract was used for row crops and he recalled pulpwood cutting from this land by the Trotters.
Alex Trotter remembered his father and grandmother's usage of the property from his childhood years. He corroborated testimony of the cultivation, pasturing, and *456 pulpwood cutting on both these disputed property tracts.
In 1955 George Trotter as owner of the Trotter property, entered into a lease with Gaddis And McLaurin, Inc., whereby Trotter was to lease land from Gaddis And McLaurin described as "between 40 and 80 acres of land in the S 1/2 of the NW 1/4 of Section 19, Township and North Range 2 West in Hinds County, Miss." Trotter admitted the existence of the lease and admitted paying rent on the lease through December, 1977. He, however, denied that the property in the lease was the same as the disputed property contained in Tract I. Instead, he maintained the position that the property he was leasing from Gaddis And McLaurin was a tract of land north and west of the disputed property. Gaddis And McLaurin's position with respect to the lease was that since it included Tract I, Trotter's use of the property was permissive. Evidence relied upon by Gaddis And McLaurin, Inc. against adverse possession of Tract I focused on the 1955 lease and not upon use of the property. The lease did not purport to describe any portion of the Tract II property.

II A.
On this proof the chancellor denied the adverse possession claim for the sole reason of the execution of the 1955 lease between Gaddis and McLaurin and George Trotter. The lease instrument purported to lease:
between 40 and 80 acres of land in the S 1/2 of the NW 1/4 of Section 19, Township and North Range 2 West in Hinds County, Miss.
The disputed property referred to as Tract 1 was a 5.85 acre tract located along the south line of the SE 1/4 of the NW 1/4 of Section 19. Under the lease description, it is impossible to determine whether the 5.505 acre tract is included in the "between 40 and 80 acres" leased.
Descriptions in leases as in deeds must describe the leasehold with certainty if the lease is to be valid. Gex v. Dill, 86 Miss. 10, 38 So. 193 (1905). See also, 49 Am.Jur.2d, Landlord And Tenant § 34 (1970). Land descriptions, to be sufficient, should enable a surveyor to locate boundaries by following the description. Overby v. Cavanaugh, 434 So.2d 1365 (Miss. 1983).
In the case sub judice, Gaddis & McLaurin, Inc. attempted to lease a given number of acres out of a larger tract of land. We have held in numerous cases that an attempted conveyance of a given number of acres out of a larger tract, without specifying where they are located within the larger tract, is void for uncertainty of description. Wilson v. Clark, 278 So.2d 250 (Miss. 1973); Mississippi Industries for the Blind v. Jackson, 231 Miss. 135, 95 So.2d 109 (1957); Heidelberg v. Duckworth, 206 Miss. 388, 40 So.2d 179 (1949); Crosby Lumber and Manufacturing Company v. Elsas, 183 Miss. 107, 183 So. 499 (1938).
George Trotter admits paying rent on the lease through December, 1977. He refutes the argument that the lease includes the Tract I property and instead, he contends that the property he leased is to the northwest of Tract I. According to the lease description, the leased property could just as likely be outside the disputed area as inside. This Court agrees and holds that the lease is too uncertain to preclude Trotter's adverse possession claim.

II B.
Even though we hold the lease description void as a defense against an adverse possession claim, the adverse possession claim of Tract I, if valid, must meet the requirements of such possession.
There are six essential elements necessary to constitute an effective adverse possession claim. There must be possession which is (1) and under claim of right, (2) actual, (3) open, notorious, and visible, (4) exclusive, (5) continuous and uninterrupted for ten years, and (6) peaceful. Houston v. U.S. Gypsum Co., 652 F.2d 467 (5th Cir.1981), Florida Gas Exploration Co. v. Searcy, 385 So.2d 1293 (Miss. 1980), Eady v. Eady, 362 So.2d 830 (Miss. 1978).
*457 In Smith v. Anderson, 193 Miss. 161, 8 So.2d 251 (Miss. 1942), this Court held:
Under Section 2287, Code of 1930, known as the "Ten Years Adverse Possession Statute," one may acquire title to land without actually occupying it, either himself or by tenant, but by merely cultivating, pasturing, cutting and selling timber and other acts of ownership and control over the same... . (Id. 8 So.2d at 256).
See Chatman v. Carter, 209 Miss. 16, 45 So.2d 841 (1950).
The possession must be sufficient to put another on notice, actual or imputable, of an adverse claim to his property. Without such notice, possession will never ripen into title. Further, mere possession is not sufficient to satisfy the requirements of open and notorious possession. Craft v. Thompson, 405 So.2d 128 (Miss. 1981); See Peoples Realty & Development Corp. v. Sullivan, 336 So.2d 1304 (Miss. 1976).
In Cole v. Burleson, 375 So.2d 1046 (Miss. 1979) property not contained in appellant's deed was enclosed by a fence built by appellees' predecessor in interest in 1949. Three other predecessors had title before appellee obtained the property in 1972. Objection to the fence was made by appellants after appellee had obtained title and a suit to enjoin appellee from entering the property was filed. The 1949 fence had been in a state of disrepair since 1955.
Holding that the appellees' predecessors in interest had obtained title by adverse possession, this Court stated:
It is not required that land claimed under adverse possession be in the same quarter section or section as the land described in the deed lies. The rule is the same as, if there had been no deed, the disputed land had been enclosed by a fence, and ownership had been claimed and exercised for ten (10) years. Title would ripen by adverse possession and it is not necessary that a fence, which formerly enclosed the land claimed for a period of ten years, or more, be standing or in existence at the time suit is filed. If a fence encloses the property for ten years, under a claim of adverse possession, title vests in the claimant and possessor, even though the fence was subsequently removed or fell into disrepair. (Id. at 1048).
The evidence showed the "1916" fence to be a continuous fence representing the northern and western boundary of the Trotter property. While portions was in disrepair, it clearly had been maintained as a property line fence for the statutory period. The evidence also showed that Trotter tenants cultivated portions of Tract 1 during the 1920's and 1930's. The Trotters likewise cultivated portions of the tract during that time period. The land was also used as pasture for winter grazing. The evidence further showed that during the 1960's the land known as Tract 1 was cultivated by the Trotters. Also, pulpwood was cut from this land off and on by John Henry Logan, the last period of cutting occurring in the 1970's.
The fence is evidence of hostile ownership under claim of right. The Trotters use of Tract I was open, notorious and exclusive according to the testimony. There was no testimony of objections or otherwise unpeaceful possession of the land until the time period immediately preceding this lawsuit.
We, therefore, hold that title to the acreage within Tract I vested in Alex Trotter through the adverse possession of his predecessors in interest.

III A.

AS TO TRACT II
We now turn our attention to the 9.8 acres of land situated in Tract II along the western boundary of the Trotter property.
As to Tract II, west of Trotter's land, the Trotters had used and occupied these 9.8 acres as primarily pasture land since 1916. Additionally timber was cut from the disputed acreage for Trotter by John Henry Logan. All of this usage was exercised by the Trotters in the area up to the 1916 fence line.
*458 Then in 1960, T.H. Gaddis, President of Gaddis Farms, approached George Trotter about building a fence along the western boundary of Trotter's property. Gaddis Farms planned to use the fence to contain its cattle. Dissatisfied with location of the proposed fence, Trotter disagreed as to its position, and to secure Trotter's agreement, Gaddis constructed the 1960 fence 50 feet east of the old 1916 fence at its widest point. Shortly after the construction of this fence, termed a "partnership" fence by Gaddis Farms[1], George Trotter tore it down. He did not give notice to Gaddis Farms that it was being torn down, nor did Gaddis Farms discover its destruction until 1968 since it was located in a wooded area. When Gaddis approached Trotter about the fence, Trotter advised Gaddis that he was claiming all of the land inside the old 1916 fence.
As record title holder, Gaddis & McLaurin and Gaddis Farms paid the taxes due each year on their respective tracts. Evidence indicated that Gaddis Farms used Tract II during the 1960's for cattle grazing for a period of time, entry being acquired through breaks in the 1916 fence.
The lower court's ruling was that George Trotter had a duty to inform Gaddis Farms that he was claiming the land to the east of the "1916" fence when he tore down the "1960 partnership fence." The argument of Gaddis Farms is premised on the fact that they did not become aware of Trotter's claim until discovery of the torn down fence in 1968. Objections made to Trotter's claim prior to 1978 would have prevented the statutory time period of ten years from running in favor of Trotter.
First, we address the duty of giving notice. Possession must be sufficient to put another on notice, actual or imputable, of the adverse claim, and without such notice, possession will never ripen into title. Craft v. Thompson, 405 So.2d 128 (Miss. 1981).
It was not incumbent upon George Trotter to knock on Gaddis Farm's door and advise them of his claim. The destruction of the 1960 "partnership" fence which Gaddis Farms helped build and subsequent use of the property by Trotter if the use met the other requirements, would have been sufficient to impute notice to Gaddis Farms. We, however, resolve the Tract II dispute on the same basis as the Tract I property dispute.
Again, Alex Trotter used this tract of land as did his predecessors in interest. From a period of time shortly after 1916, this 9 acres was being used by the Trotters. The record indicates that it was not until 1960 that Gaddis Farms began to jointly use the disputed property for pasture purposes. The testimony showed that this tract had been used for pasture and timber by the Trotters for many years by Alex Trotter's predecessors in interest before any dispute arose. Alex Trotter testified that this property was used by his predecessors for cultivation of potatoes and rye grass since he was 8 or 9 years old. Collins worked this property as a tenant farmer from 1960 through 1966. Timber from Tract II was sold by the Trotters to John Logan on several occasions.
This extensive usage by the Trotters met the requirement of hostile, open, notorious, peaceful and uninterrupted possession for ten years. We, therefore, hold that title vested in Alex Trotter through adverse possession by his predecessors prior to the 1960 "partnership" fence dispute, the use by Gaddis Farms of this tract as pasture land in the 1960's could not divest the Trotters of their claim which ripened prior to that time since their usage did not meet the adverse possession requirements.

IV.
It is the opinion of this Court that the chancellor was manifestly wrong by relying on the 1955 lease as a defense to Trotter's adverse possession claim. We further hold that George Trotter's failure to give *459 Gaddis Farms actual notice of his claim in 1960 does not divest Alex Trotter of his claim of adverse possession. As a result of the adverse possession and use of both tracts of property by Alex Trotter and his predecessors, title to these properties vested in him.
We, therefore, render the decision in this Court and hold that H. Alex Trotter holds title to Tract No. I and II as the tracts are described in the complaint filed in the chancery court.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and BOWLING, HAWKINS, DAN M. LEE, ROBERTSON and SULLIVAN, JJ., concur.
NOTES
[1] Gaddis Farms claims to have built this fence with the financial and labor support of Mr. Trotter.