863 So.2d 1037 (2004)
FAVRE PROPERTY MANAGEMENT, LLC, Appellant,
v.
CINQUE BAMBINI, a Mississippi Partnership, Appellee.
Cinque Bambini, a Mississippi Partnership, Appellant
v.
Favre Property Management, LLC, Appellee.
Nos. 2002-CA-00395-COA, 2002-CA-01092-COA.
Court of Appeals of Mississippi.
January 20, 2004.
*1039 William Carl Miller, Biloxi, attorney for appellant.
Harry R. Allen, David W. Crane, Gulfport, attorneys for appellee.
Before McMILLIN, C.J., IRVING, and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Favre Property Management, LLC filed a complaint against Cinque Bambini, a Mississippi Partnership, alleging breach of a contract to purchase land. The Circuit Court of Hancock County dismissed the complaint for failure to state a claim upon which relief can be granted, and Favre appeals. Cinque Bambini appeals *1040 from the circuit court's denial of its motion for sanctions pursuant to Mississippi Rule of Civil Procedure 11. We find that Favre's complaint was sufficient to withstand dismissal, and therefore, reverse and remand for further proceedings. As we find that Favre's complaint stated a claim, we affirm the trial court's refusal to sanction Favre for a frivolous pleading.

FACTS AND PROCEDURAL HISTORY
¶ 2. Favre's complaint alleged that Favre was the assignee of a contract to purchase a parcel of land from Cinque Bambini. The assignor of the contract was RMC, LLC. Favre attached several documents to the complaint, including a copy of the assignment and a copy of the contract, styled "Purchase Agreement."
¶ 3. Following are the relevant provisions of the contract. The contract identified Cinque Bambini as the seller and RMC as the buyer. The contract described the subject property as "the real property of the Seller located south of Crump Road in Hancock County, Mississippi." The purchase price was $27,000,000, payable in a series of four deposits with the balance to be paid upon closing. Specifically, the contract required the buyer to pay deposits of $25,000 on execution of the contract, $150,000 on the sixty-first day following the effective date, $200,000 on the 151st day following the effective date, and $300,000 on the 271st day following the effective date. If the buyer failed to timely make any payment, or if the closing did not occur within one year of the effective date of the contract, the buyer would have no further rights regarding the subject property, and Cinque Bambini would retain all amounts previously paid by the buyer. Cinque Bambini was to retain possession of the subject property until the closing, but the buyer could make physical inspections. The contract provided that time was of the essence.
¶ 4. The buyer was to deliver a survey of the subject property to Cinque Bambini and the title company within sixty days of the effective date of the contract. If the buyer made the second deposit payment of $150,000, Cinque Bambini was to reimburse the buyer for one-half the cost of the survey up to $20,000. If the buyer so elected, the buyer could forego obtaining a survey so long as Cinque Bambini agreed to the description of the subject property used in the deed. The contract gave the buyer an option to purchase additional acreage for $9,000 per acre if the survey revealed that the subject property contained less than 2,850 acres. The buyer could exercise the option by notifying Cinque Bambini prior to the closing of its intention to purchase the additional acreage.
¶ 5. The contract forbade Cinque Bambini from executing "any lease, license or other agreement affecting the ownership or operation of the Premises" without the buyer's prior written approval, and from amending any existing contract or entering into any new contract "with respect to the ownership and operation of the Premises" that would survive the closing or otherwise "affect the Buyer's use, operation or enjoyment of the Premises, without Buyer's prior written consent." The contract entitled Cinque Bambini to remove timber from the subject property for proper maintenance of the subject property "without Buyer's prior consent; provided that such removal does not adversely affect the value of the Land and is consistent with [Cinque Bambini's] historical practices." The contract also contained a "reasonable efforts" clause, stating that "[Cinque Bambini] and Buyer shall use their reasonable, commercial efforts and shall cooperate with and assist each other in their efforts *1041 to obtain such consents and approvals of third parties (including, but not limited to, governmental authorities) as may be required to consummate the transaction contemplated hereby, and shall otherwise perform as may be necessary to effectuate a transfer of the Premises to Buyer in accordance with this Agreement."
¶ 6. On December 11, 2000, RMC assigned its right, title and interest in the contract to Favre. The assignment stated that Favre, the assignee, had paid $175,000 to Cinque Bambini, as well as paid overhead and engineering costs sustained in effecting the purchase of the subject property. The assignment stated that Favre would assign one half of its interest in the contract back to RMC upon RMC's repayment of all the money advanced by Favre.
¶ 7. In the complaint, Favre alleged that, though Favre had timely paid $175,000 in earnest money due under the contract, Cinque Bambini had continually refused to provide Favre with a legal description of the property. Favre stated that the legal description was "necessary to complete the title work." Favre stated that, on December 27, 2000, Cinque Bambini demanded $200,000 "as an additional deposit" before it would perform its contractual obligations. Favre accused Cinque Bambini of misrepresenting the acreage amount and of failing to perform a subsequent oral agreement that Cinque Bambini would provide the survey instead of Favre.
¶ 8. Favre further alleged that, prior to Cinque Bambini's demand for the $200,000, Cinque Bambini "cut and removed timber from the property, entered into contracts for billboards and/or telephone towers and began negotiations for the sale of the property with third parties" without Favre's permission and in violation of the contract. Favre referenced a subsequent written proposal by Cinque Bambini. The proposal was attached to the complaint, and provided that Cinque Bambini's timber harvesting and telephone tower leases did not breach the original contract. The complaint indicates that Favre never agreed to Cinque Bambini's proposal. The complaint alleged that Cinque Bambini failed to negotiate in good faith and intentionally breached the contract, and requested specific performance, as well as actual and punitive damages.
¶ 9. Cinque Bambini moved for dismissal for failure to state a claim and for sanctions. As the contract did not state its effective date, Cinque Bambini attached to the motion an affidavit of its general partner averring that the effective date of the contract was July 28, 2000, and a copy of a letter to that effect. In its motion, Cinque Bambini stated that Favre paid $175,000 in earnest money, but failed to make the $200,000 payment due on the 151st day following the effective date of the contract. Cinque Bambini contended that it had no duty to provide a survey because the contract placed the duty to obtain a survey upon Favre. Cinque Bambini contended that any oral agreement otherwise was barred by the statute of frauds and by the parol evidence rule. Cinque Bambini averred that, because Favre failed to make the $200,000 scheduled earnest money payment, by the terms of the contract, Favre had no standing to maintain an action for breach.
¶ 10. Favre's response to the motion to dismiss reiterated its arguments, but also introduced new information supported by attached affidavits. Favre stated that the reason it needed a legal description was that the survey was impossible to perform without one. In an attached affidavit, the surveyor stated that he "expended numerous weeks attempting to complete a survey without benefit of a legal description," and that a legal description was necessary to finish the survey. Favre stated that Cinque *1042 Bambini had the legal description in its possession, and, after January 1, 2000, had given a copy of it to an attorney with instructions not to distribute it without permission. An affidavit of the attorney to that effect was attached. In another affidavit, the manager of RMC averred that he made numerous requests for a legal description, which were refused by Cinque Bambini. Favre stated that it declined to make the $200,000 scheduled earnest money payment because Cinque Bambini had breached the contract. Favre claimed that Cinque Bambini's refusal to give Favre the legal description breached its contractual duty to make reasonable efforts to effectuate the transfer of the property and violated the implied covenant of good faith and fair dealing.
¶ 11. At a hearing on the motion, Favre stated that it needed the survey in order to decide whether to exercise its option to purchase additional acreage. Favre averred that it could not procure the necessary legal description from courthouse records because of gaps in the chain of title. Cinque Bambini argued that, because the contract placed the duty to obtain a survey upon Favre, Cinque Bambini had no duty to facilitate the surveying process by providing the legal description. Cinque Bambini moved to strike Favre's affidavits because they constituted matters outside the pleadings.
¶ 12. On February 27, 2002, the trial court entered a corrected order dismissing Favre's complaint under Mississippi Rule of Civil Procedure 12(b)(6). The court held that the legal description provided in the contract was a sufficient legal description to convey title to the subject property. The court found that Cinque Bambini had no duty to provide a survey under the clear terms of the contract. The court held that the statute of frauds and the parol evidence rule barred Favre's argument that Cinque Bambini breached a subsequent oral agreement to provide a survey. The court found that, because Favre was in breach of its unconditional obligation to pay earnest money, Favre could not maintain an action for breach of contract based on Cinque Bambini's timber harvesting or telephone tower leases. The court reserved ruling on Cinque Bambini's motion for sanctions, but entered an order dismissing that motion on June 3, 2002.

LAW AND ANALYSIS
¶ 13. Rather than amending its complaint, Favre filed a notice of appeal from the February 27 order dismissing the complaint pursuant to Rule 12(b)(6). As the February 27 order did not dispose of Cinque Bambini's pending motion for sanctions, the order was not a final judgment from which an appeal could be taken. M.R.C.P. 54(b). However, Favre effectively appealed by filing an amended notice of appeal from the Rule 12(b)(6) dismissal within thirty days of the June 3 order disposing of the motion for sanctions. M.R.A.P. 4(a). Cinque Bambini also timely appealed from the June 3 order, and the Mississippi Supreme Court consolidated the appeals. Therefore, these appeals are properly before this Court.
¶ 14. A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of the complaint, and raises a question of law. Little v. Miss. Dept. of Human Services, 835 So.2d 9, 10-11 (¶ ¶ 5-6) (Miss.2002). Therefore, this Court reviews a 12(b)(6) dismissal de novo. Id. at (¶ 5). On review, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears to a certainty that the plaintiff will be unable to prove any set of facts in support of the claim. Id. at (¶ 6).
*1043 ¶ 15. As an initial matter, we address the effect of Favre's introduction, in its response to the motion to dismiss, of new allegations and evidence outside the complaint. Favre attached several supporting affidavits to the response. Rule 12(b) provides
[i]f, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56....
Rule 56(c) provides that the trial court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Appellate review of the trial court's grant of summary judgment is de novo. Russell v. Orr, 700 So.2d 619, 622(¶ 8) (Miss.1997). As Favre's affidavits were presented to the lower court, we must determine whether the motion to dismiss was converted into one for summary judgment pursuant to Rule 12(b).[1]
¶ 16. "Whether a Rule 12 motion ought to be converted into a motion for summary judgment is a function of whether the Circuit Court finds it necessary to resort to matters outside the pleadings in order to dispose of the motion." Walton v. Bourgeois, 512 So.2d 698, 700 (Miss.1987). Under Rule 12(b), even if matters outside the pleadings are introduced, the trial court may exclude those matters and review the motion pursuant to Rule 12(b)(6). The instant case is complicated by the fact that the trial court never expressly excluded Favre's affidavits. However, it appears from its order that the trial court strictly limited its review to the face of Favre's complaint, and did not consider any evidence outside of the complaint in its disposition of the motion. As the lower court did not consider matters outside the pleadings, we find that it dismissed Favre's claims pursuant to Rule 12(b)(6). See Petition of 2,952 Registered Voters, 574 So.2d 619, 622 (Miss.1990).
¶ 17. Another complicating matter is Favre's allegation regarding the legal description. In its complaint, Favre alleged that it needed the legal description to "complete the title work." Cinque Bambini's motion to dismiss responded to that allegation. Then, in its response to the motion to dismiss, Favre alleged that it needed the legal description to perform the survey. This new allegation, extraneous to the complaint, was the subject of significant arguments by both parties at the motion hearing. Cinque Bambini never objected to the injection of this issue into the case. Mississippi Rule of Civil Procedure 15(b) provides that "when issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." We find that, though this issue was not raised in Favre's pleading, the issue had been placed before the lower court by the implied consent of the parties. M.R.C.P. 15(b); Stewart v. Graber, 754 So.2d 1281, 1285 (¶ 18) (Miss.Ct.App.1999).
*1044 ¶ 18. We now reach the merits of the 12(b)(6) dismissal, limiting our review to the allegations in Favre's complaint. Cinque Bambini argues that Favre failed to state a claim for breach of contract. The elements of a breach of contract are: (1) the existence of a valid and binding contract; (2) that the defendant has broken, or breached it; and (3) that the plaintiff has been thereby damaged monetarily. Warwick v. Matheney, 603 So.2d 330, 336 (Miss.1992). Favre's complaint alleged each of these elements. We must determine whether the allegations of breach, taken as true, are sufficient to state a claim for breach of contract.
¶ 19. Favre claimed that Cinque Bambini breached the contract by "enter[ing] into contracts for billboards and/or telephone towers." The contract provided that Cinque Bambini would not execute any agreements affecting ownership or operation of the property, or execute any new contract respecting the ownership and operation of the property. Favre's claim that Cinque Bambini contractually bound the subject property to third parties for billboards and/or telephone towers clearly alleged that Cinque Bambini breached these contractual provisions. Favre also alleged that Cinque Bambini harvested timber in breach of the contractual provision allowing timber cutting only for maintenance or in accordance with prior practices. Cinque Bambini argued, and the trial court found, that Favre could not maintain an action for the breach of these provisions because Favre admittedly did not make the third earnest money payment.
¶ 20. It is well established that a party's material breach of a bilateral contract excuses further performance by the other party. Gulf South Capital Corp. v. Brown, 183 So.2d 802, 804-05 (Miss.1966). The issue of whether a breach was material is a question of fact. UHS-Qualicare, Inc. v. Gulf Coast Cmty Hosp., Inc., 525 So.2d 746, 756 (Miss.1987). Favre's complaint stated that Cinque Bambini executed contracts for telephone towers and harvested timber before December 27, 2000. A question is raised of whether the alleged execution of telephone tower contracts and timber harvesting occurred before the third earnest money payment was due. This question alone was sufficient to prevent dismissal of Favre's claim because, if Cinque Bambini committed a material breach before the third earnest money payment was due, then the breach excused Favre's further performance. The third earnest money payment was due on the 151st day following July 28, 2000, the effective date of the contract. We take judicial notice that December 26, 2000, was the 151st day following July 28, 2000. Thus, Favre's complaint alleged that Cinque Bambini breached the contract first. If Cinque Bambini's execution of contracts and/or timber harvesting amounted to a material breach, then the breach excused Favre's further performance, including payment of earnest money. Gulf South Capital Corp., 183 So.2d at 804-05. Therefore, Favre's complaint stated a claim upon which relief could be granted, and dismissal was improper.
¶ 21. Though we have found that Favre's complaint was sufficient to withstand dismissal, we address Favre's claims that Cinque Bambini had a duty to provide a survey and a legal description. Favre's assertion that Cinque Bambini owed it a survey has no merit. The contract placed the duty to obtain a survey upon Favre. As the contract was clear and unambiguous on this point, the parties' subsequent negotiations were inadmissible to show any different intention of the parties. Bradley v. Howell, 161 Miss. 346, 352, 134 So. 843, 844, (1931). Any subsequent *1045 oral agreement that Cinque Bambini would provide a survey is barred by the statute of frauds. This is because a contract to purchase land is within the purview of the statute of frauds, and any modification of a contract that comes under the statue of frauds must be in writing. Miss.Code Ann. § 15-3-1(c) (Rev.1995); Canizaro v. Mobile Communications Corp. of Am., 655 So.2d 25, 29 (Miss.1995). We observe that the parol evidence rule is no bar to evidence of a subsequent modification of the contract. Kelso v. McGowan, 604 So.2d 726, 731 (Miss.1992).
¶ 22. Favre argued that Cinque Bambini intentionally withheld a legal description of the subject property in violation of the contract's "reasonable efforts" clause and the implied covenant of good faith and fair dealing. Favre claimed that, without a legal description, it was impossible for Favre to obtain a survey of the subject property. Cinque Bambini argues that it had no contractual duty to help Favre obtain a survey, and that Favre could not complain because it could have constructed a legal description of the subject property from the county land records.
¶ 23. Because this is a 12(b)(6) dismissal, we take as true Favre's assertion that it could not get a survey of the subject property without a legal description. Mississippi Code Annotated section 89-5-33 (Rev.1999) provides for a system of general and sectional indices for recordation of land descriptions in each county. However, the prevalence of boundary dispute litigation indicates that these records are not infallible sources of property descriptions, and that situations may arise where the descriptions are incomplete or conflicting. See Goff v. Lever, 566 So.2d 1274, 1275-76 (Miss.1990); Simmons v. Cleveland, 749 So.2d 192, 194-95 (¶ ¶ 4-7) (Miss.Ct.App.1999); see also Miss. Ind. for the Blind v. Jackson, 231 Miss. 135, 140-41, 95 So.2d 109, 111-12 (1957) ("registration of an instrument is constructive notice to the world of the contents of the paper there recorded ... and it will have no operation or effect unless the ... instrument correctly and sufficiently describes the premises which are to be affected"). Therefore, we decline to hold, especially at this stage in the litigation, that the mere existence of the land recording system precludes Favre's argument.
¶ 24. Favre's argument requires our determination of the parties' rights and duties under the contract. "When construing a contract, we read the contract as a whole, so as to give effect to all of its clauses." Brown v. Hartford Ins. Co., 606 So.2d 122, 126 (Miss.1992). We construe a contract objectively and determine the parties' intent from "`the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties.'" Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419 (Miss. 1987) (quoting Hunt v. Triplex Safety Glass Co., 60 F.2d 92, 94 (6th Cir.1932)).
¶ 25. We review the provisions of the contract previously recited in our statement of the facts. The contract clearly placed the duty to obtain a survey upon Favre. Favre had sixty days from the effective date of the contract in which to deliver a copy of the survey to Cinque Bambini and the title company. Favre could forego a survey only if Cinque Bambini agreed to use the description of the subject property found in the deed. Favre's ability to exercise its option to purchase additional acreage was contingent upon its procurement of a survey, which would have showed whether the subject property consisted of less than 2,850 acres. If Favre did not obtain a survey, by the clear terms of the contract Favre could not have exercised its option to purchase additional acreage.
*1046 ¶ 26. In Cenac v. Murry, 609 So.2d 1257, 1272 (Miss.1992), the supreme court discussed the inherent contractual duty of good faith and fair dealing. "Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party. The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." Id. The covenant holds that "neither party will do anything which injures the right of the other to receive the benefits of the agreement." Cothern v. Vickers, 759 So.2d 1241, 1248 (¶ 17) (Miss.2000). The covenant not only imposes a duty not to prevent or hinder the other party's performance, but may impose a duty "to take some affirmative steps to cooperate in achieving these goals." Cenac, 609 So.2d at 1272. In the present case, these principles were encapsulated by the clause in the contract requiring the parties to make reasonable efforts to effectuate a transfer of the premises.
¶ 27. Favre's argument accuses Cinque Bambini of intentionally thwarting its effort to obtain a survey by withholding the legal description. Our review of the contract terms indicates that an inability by Favre to obtain a survey would have hindered its ability to perform under the contract. The survey was due within sixty days of the effective date of the contract. Favre was unable to simply forego obtaining the survey; before it could do so, it had to secure Cinque Bambini's agreement to use the description in the deed. Presumably, if Favre did not obtain a survey and Cinque Bambini refused to use the description in the deed, then Favre would have been in breach of its contractual duty to provide a survey. Further, Favre was wholly unable to exercise its option without a survey. "If one party to a contract prevents another party from carrying out his part of the agreement, he becomes liable in damages for the breach of the contract." Callicott v. Gresham, 249 Miss. 103, 111, 161 So.2d 183, 186 (1964). Taking Favre's allegations as true, we are unable to say that Cinque Bambini's intentional withholding of a legal description, especially in light of Cinque Bambini's other misbehavior, could under no set of facts be so unreasonable as to constitute a breach of the covenant of good faith and fair dealing. Assuming Favre proved such a breach occurred, whether or not the breach excused Favre's further performance of the contract would depend upon whether the facts demonstrate that the breach rose to the level of materiality. Gulf South Capital Corp., 183 So.2d at 804-05.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF HANCOCK COUNTY IN CASE NUMBER 2002-CA-00395-COA IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE. THE JUDGMENT OF THE CIRCUIT COURT OF HANCOCK COUNTY IN CASE NUMBER 2002-CA-01092-COA IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND GRIFFIS, JJ., CONCUR.
NOTES
[1] The contract and proposal attached to Favre's complaint, and the affidavit averring the effective date of the contract attached to the motion to dismiss, are considered part of the pleading because they are central to the cause of action for breach of contract. Sennett v. U.S. Fidelity & Guar. Co., 757 So.2d 206, 209(¶ 9) (Miss.2000).