754 So.2d 1281 (1999)
Calvin STEWART and Marine Stewart, Appellants,
v.
Ben GRABER and Silva Graber, Appellees.
No. 1998-CA-01822-COA.
Court of Appeals of Mississippi.
December 14, 1999.
*1282 Jerry Askew, Starkville, Attorney for Appellants.
Roderick Dixie Walker, Macon, Attorney for Appellees.
BEFORE SOUTHWICK, P.J., LEE, AND PAYNE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. This is an appeal from a judgment entered in a boundary line dispute. We find no error in the decision regarding the property lines that arise from the deeds that are of record. We also find, though, that adverse possession was tried by consent. The failure of the chancellor to address adverse possession causes us to remand temporarily for further proceedings.

FACTS
¶ 2. The parties share a common north-south boundary line. Since at least 1973, their properties have been separated by a fence that is only partially detectable today. Calvin and Marine Stewart acquired their property by deed in 1966 and obtained a 1967 correction warranty deed. Ben and Silva Graber acquired their property for the first time in 1977, but then lost it by foreclosure in 1986. The foreclosure sale purchaser, the Federal Land Bank, then sold part of the tract to Levi Lee. The Grabers rented the property from Lee until they bought it about 1990. Another person bought the remaining acreage and sold it back to the Grabers around 1990.
¶ 3. When the Graber property was separated into two tracts after foreclosure, a fifty-foot wide strip of land fronting the public road was not included in the fifteen-acre tract sold to Levi Lee in order to allow access to the remaining acreage, which was behind the fifteen acres. The fifteen-acre tract was surveyed in 1986, and the surveyor placed an iron pin on the public right of way at the corner of the fifteen-acre tract and the fifty-foot strip. The strip was bounded on the east by the old fence line between the Stewart and the Graber property. In other words, this *1283 omitted tract was on the eastern boundary of the entire Graber property and the western boundary of the Stewarts'.
¶ 4. The different views on boundaries of this small area, in geographical order from west to east, are these
1. The Grabers own everything to the west of what ultimately is determined to be the boundary. Stewart's view of his true western boundary is further west than any other and would arise solely from adverse possession
2. The old fence line is the next possible boundary;
3. The line in the deed to the Stewarts is next and is the one adopted by the trial court; and
4. The line in the Grabers' deed is the most easterly possible boundary. The Stewarts own everything to the east of the final determined boundary.
¶ 5. A fifty foot wide tract immediately west of the old fence line, boundary number 2 above, is what was not included in the deed to the Lees, who temporarily owned some of the Graber land west of this line after the Federal Land Bank foreclosure. Whether the eastern boundary in the description of what was conveyed to the Lees is the same as line number 1 is unclear, but it is probably close.
¶ 6. Evidence was introduced that Stewart maintained a garden on a strip of land some sixty-one and a half feet at its widest point beyond the old fence line for a number of years, that he grazed cattle on the land, cut hay from it, and on one occasion stopped Mrs. Graber when she attempted to cut grass on the disputed land. That tract is between boundary line number 1 and 2. When Ben Graber started building a catfish pond that Stewart believed intruded on his property, he confronted him and told Graber the pond was "over too far."
¶ 7. About five years ago, the Stewarts bulldozed part of the old fence and set up a new fence extending back from the road a few hundred feet to mark what they believed was the true property line. The Grabers contend this new fence encroached about fifty feet on their property. Both parties had professional surveys done, the Grabers of their entire property and the Stewarts only of the disputed boundary. According to the Grabers, the Stewarts's surveyor incorrectly assumed that an iron pin that had been set during the 1986 division of his property was the iron pin referred to in the 1966 deed. The Grabers assert this skewed the Stewarts's survey and made it incorrect.
¶ 8. The Grabers filed a complaint in Lowndes County Chancery Court to remove cloud from the title to their property on November 15, 1997. They asserted that the old fence line (boundary number 2) approximated the correct property line, and that the Stewarts should be required to remove their encroaching fence and to honor the old fence line. In their answer, the Stewarts denied the Grabers's allegations, admitting the existence of the old fence line but denying that it had ever been claimed to be the true property line. The Stewarts failed in their answer to assert an affirmative defense of adverse possession.
¶ 9. Trial was held before the chancellor on October 20, 1998. While much of the testimony concerned the two surveys and the location of the true property line, there also was testimony pertaining to use of the land over the years. Witness Jerry Fowler, who sold the Grabers their property, testified that during the time he owned the property, from 1973 until 1977, he and the Stewarts had accepted the old fence line as the true property line, but that Stewart had cut hay off part of his property "a couple of times."
¶ 10. Several witnesses testified that every year until the last year before trial, the Stewarts had a vegetable garden or "truck patch" between boundary number 1 and 2. Among those using the garden were two sons, Willie Stewart and Calvin Stewart Jr., and long-time neighbors Ledora Fields *1284 and Thattis Hairston. These sons testified to their father's use of the land as a cattle enclosure.
¶ 11. The chancellor ruled that the correct property line was boundary number 2, the old fence line and an extension of it north to the section line and south to the public road. He ordered the Stewarts to remove the new fence they had constructed on boundary number 1. His judgment mentioned the surveys but no reference to adverse possession was made.

DISCUSSION

I. Arbitrary and Capricious
¶ 12. We will not disturb the findings of a chancellor unless they are clearly erroneous or an erroneous legal standard was applied. Mercier v. Mercier, 717 So.2d 304, 306 (Miss.1998).
¶ 13. The issue resolved by the chancellor arose from the fact that the descriptions in deeds were based on surveys that included references to surveyor's iron pins that were difficult to locate with certainty. The chancellor conscientiously evaluated the two different surveys and the circumstances under which they were conducted, as well as the photographs and other evidence pertaining to the boundary lines. He sorted through a jumble of evidence arising from a controversy at least twenty years old to arrive at a well-reasoned determination of the correct boundary line, based on plentiful evidence. It was entirely within his discretion to recognize one survey and reject the other. If the only concern in this case were the correct boundary line, his judgment would stand undisturbed.

II. Adverse Possession
¶ 14. Evidence was presented regarding adverse possession, some of which has already been described. A statute is the first place to look for the rules governing such possession:
Ten years' actual possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten years by occupancy, descent, conveyance or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title....
Miss.Code Ann. § 15-1-13 (Supp.1999).
¶ 15. Much case law has also developed in interpreting this statute. One asserting a claim of adverse possession must prove by clear and convincing evidence the existence of six elements. Possession must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. Stallings v. Bailey, 558 So.2d 858, 860 (Miss.1990). The ultimate question is whether the possessory acts relied upon by the would-be adverse possessor are sufficient to put the record title holder on notice that the lands are held under an adverse claim of ownership. Johnson v. Black, 469 So.2d 88, 90-91 (Miss.1985). Persons relying on adverse possession as the basis for their claim of title have the burden of proof on the issue. Eady v. Eady, 362 So.2d 830, 832 (Miss.1978).
¶ 16. The first problem that we confront is that an affirmative defense of adverse possession was never asserted in the pleadings. Adverse possession must be pleaded and proved by the party who relies on it, and failure to do so waives that affirmative defense. White v. Turner, 197 Miss. 265, 19 So.2d 825, 826 (Miss.1944). That remains the law today. In White, the court refused to rule that title to a piece of land had been lost through adverse possession absent a sufficient pleading. Id.
¶ 17. There is more to the question, however. Evidence on the elements of adverse possession is considerable. Several witnesses testified to the presence for years of a vegetable garden on the disputed property, to the existence of a cattle enclosure, and to the Stewarts' insistence *1285 over the years that the land was theirs. The chancellor stated that as "early as the 1970's [the Stewarts] attempted to assert that the property line was west of the old fence row, however this fact is negated by the surveys." In closing arguments, counsel for the Stewarts openly argued adverse possession. At no point did counsel for the Grabers object. When the chancellor made no ruling regarding it, one of the grounds in the Stewarts' motion for new trial was that title should have been confirmed because of adverse possession. The motion was found "not well taken" and denied.
¶ 18. Despite the 1944 White decision, the issue of adverse possession may be tried by consent.
When issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure to so amend does not affect the result of the trial of these issues.

M.R.C.P. 15(b) (emphasis added). Therefore, the failure of the Stewarts to amend their pleadings to make them conform to the evidence relative to adverse possession is not fatal.
¶ 19. In a related precedent, the supreme court found that the issue of alimony in a divorce case was properly tried by consent even though the complaint was for separate maintenance, not alimony, because the husband put on evidence as to alimony, failed to object, and failed to raise any due process considerations. Weiss v. Weiss, 579 So.2d 539, 542-543 (Miss.1991). Similarly, both parties here put on evidence concerning adverse possession, the Stewarts argued the issue, and the Grabers failed to object.
¶ 20. With sincere respect for the chancellor involved, we find that adverse possession should have been considered and ruled upon in the judgment. Such possession can be dispositive in a boundary line dispute. E.g., Stallings v. Bailey, 558 So.2d 858, 860-61 (Miss.1990).
¶ 21. Therefore, we remand the case to the trial court for an examination of the evidence related to adverse possession. Since the issue has already been tried and the chancellor has had the benefit of the evidence, we do not reverse the judgment. Instead we retain jurisdiction in order more expeditiously to resolve the issues that the parties have presented.
¶ 22. The chancellor tried the case slightly more than a year ago. Perhaps through a review of the transcript and any notes that he retained, the chancellor may make adequate supplemental findings and conclusions of law. A hearing may be considered at the request of a party or ordered sua sponte by the chancellor. We order that supplemental findings and conclusions regarding adverse possession be submitted within ninety days of this release of this opinion. Simultaneous supplemental briefs are to be filed by the parties thirty days after the chancellor has filed his findings with the clerk of this court.
¶ 23. THE CAUSE IS REMANDED TO THE CHANCERY COURT OF LOWNDES COUNTY FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. NO COSTS ARE ASSESSED AT THIS TIME.
McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.