IRVING, J.,
for the Court.
¶ 1. Willie Walter Moses was convicted by a Marion County Circuit Court jury of five counts of statutory rape, one count of sexual battery, and three counts of fondling. Moses now appeals and alleges that the trial court erred (1) in not sustaining his motion to quash the indictment, (2) in allowing the State to amend the indictment, and (3) in denying his motion for a mistrial when the State elicited testimony of prior bad acts. He also contends that the verdict is contrary to the weight and sufficiency of the evidence.
¶ 2. We find no reversible error; therefore, we affirm Moses’s convictions and sentences for the several counts in the indictment.
FACTS
¶ 3. This is the second time this case has been before us. In Moses v. State, 795 So.2d 569 (Miss.Ct.App.2001) (Moses I), Moses was indicted on fifteen counts of raping Child A, along with two counts of sexual battery and five counts of fondling Child B.[1] The indictment in Moses I charged that the alleged crimes in counts one through seventeen occurred between June 1994 and September 1997.[2] Id. at 570 (¶¶ 4-5). No dates were alleged for counts eighteen through twenty-two. Id. at (117).
¶ 4. In Moses /, the trial judge granted a directed verdict in favor of Moses on three counts although there were no specific dates in the counts. The record reveals, however, that three specific, dated incidents were discussed by the trial judge as forming the basis for the counts being dismissed. However, in granting the directed verdict, the trial judge failed to properly correlate the factual incidents to an appropriate numerical count of the indictment. That could be done only by correlating the incidents from a temporal *733 perspective with the numerical counts of the indictment, i.e., by making the first incident correspond with count one of the indictment and the successive incidents correspond seriatim with the numbered counts of the indictment. Rather than making the correlation, the trial judge arbitrarily designated those three counts as counts fourteen, fifteen, and twenty-two. Id. at 570(¶ 3). A proper correlation of the incidents temporally with the counts in the indictment would reveal that the trial judge actually granted a directed verdict as to counts one, six, and twenty instead of fourteen, fifteen and twenty-two as stated in the judgment of conviction.
¶ 5. On appeal, this Court reversed and rendered seven counts. Id. at 573(¶ 19). The trial judge’s failure to properly correlate the factual incidents temporally with the counts in the indictments resulted in this Court incorrectly identifying those counts as counts seven through thirteen when in fact they were counts nine thróugh fifteen. Although the counts were misidentified by number, it is clear from the record in Moses I, that we reversed and rendered all offenses which occurred after Child A had reached her fourteenth birthday. Id.
¶ 6. We also reversed and remanded the remaining counts, i.e., counts one through six and sixteen through twenty-one, due to a lack of specificity in the dates and facts of the alleged incidents. Id. at 572-73 (¶¶ 17-18). Because the incidents were not temporally correlated seriatim with the numbered counts of the indictment, the remaining counts were also misidentified. Had the correlation been done, the remaining counts would have been identified as two through five, seven and eight, sixteen through nineteen, and twenty-one and twenty-two.
¶ 7. On remand, Moses was re-indicted on eleven counts. Counts one through six charged him with statutory rape of Child A. Counts seven through eleven charged him with one count of sexual battery and four counts of fondling Child B. The indictment alleged specific and separate times for each offense set forth in the eleven counts. Before the trial commenced, the State moved to dismiss counts one and ten. The jury found Moses guilty of the remaining counts of the indictment.
¶ 8. At the time of the alleged incidents, Moses was married to Child B’s mother who was also the aunt of Child A.[3] Moses, however, was not Child B’s father. Both Child A and Child B lived with BB and Moses. Child A testified that Moses began sexually abusing her in October 1994. She testified that she had just turned eleven years old. Child A stated that the abuse occurred twice that month, once when her mother and cousin were gone to the store, and again when her mother was at work. Child A further testified that the abuse happened again in September 1995, then in August 1996, and in January 1997 when she was thirteen years old.
¶ 9. Child A also testified that in June and July of 1998, she observed Moses touch her cousin, Child B, in her genital area while her mother was at work. Child A stated that when Moses became aware that she was standing there looking, he continued to move his hands in Child B’s shorts while he looked back at her (Child A). Child A claimed that she also saw Moses touch Child B on another occasion.
¶ 10. Child B next testified that Moses began sexually abusing her in June 1998 when she was thirteen years old. She stated that Moses asked her to massage him and then took her hands and put them *734 in his shorts. Child B alleged that he then touched her on her vagina. She further testified that the abuse happened again approximately a week later, and that she told her mother that Moses had been molesting her. Child B alleged that the next night while her mother was at home asleep, Moses touched her again on her vaginal area, but he was interrupted when the telephone rang. Child B stated that after Moses finished talking on the phone, he left the house and she woke her mother up and told her that it had happened again. Child B stated that the following day, while her mother was at work, Moses rubbed something on her vaginal area.
¶ 11. Moses was arrested shortly thereafter, and BB consented to a search of their residence. Police found items that the victims alleged were used during their sexual encounters with Moses. ■ These items included a pornographic tape, condoms, and some lubricant. Additional facts will be related during our discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Motion to Quash the Indictment

¶ 12. Moses first argues that the trial court committed reversible error in not sustaining his motion to quash the indictment. He specifically contends that the charges in the new indictment were barred by the doctrine of double jeopardy because the same factual allegations in the new indictment had been disposed of in the previous indictment.
¶ 13. As already noted, in Moses I, the trial judge granted Moses a directed verdict on counts fourteen, fifteen and twenty-two, and we reversed and rendered Moses’s conviction on counts seven through thirteen. But, as pointed out in the factual portion of this opinion, the record indicates that the directed verdict targeted specific, dated incidents which correspond numerically to counts one, six and twenty. The counts which we reversed and rendered were identified as those counts comprising incidents which occurred after Child A had reached her fourteenth birthday. We found that Moses was entitled to a directed verdict on those counts because the indictment alleged that all offenses occurred prior to Child A’s fourteenth birthday and not after. Moses, 795 So.2d at 573(¶19). As already observed, those counts should have been identified as nine through fifteen instead of seven through thirteen.
¶ 14. Nevertheless, for purposes of double jeopardy consideration, we look to the facts undergirding the charges in the current indictment to determine whether any of the factual bases for these charges provided the factual bases for any of the charges in Moses I which the trial judge granted a directed verdict on and for any of the charges which we reversed and rendered. We find that — although no dates were specified for some offenses in the indictment in Moses I and that, as to other offenses, the dates specified overlap the dates specified for offenses in the indictment now before us — it is still possible to make a distinction between the factual bases for the various counts in the Moses I indictment and the factual bases for the counts of the current indictment since the dates and facts that supported the counts in the indictment in Moses I are set forth with specificity throughout the record.
¶ 15. Our review of the record in Moses I reveals that the trial judge granted a directed verdict on two incidents involving Child A and one incident involving Child B. The first incident involving Child A, upon which a directed verdict was granted, occurred in September 1994 while Child A was watching a movie entitled “Willow.” *735 In that incident, Moses called the child in his bedroom, got down on the floor, and had the child massage his legs. When she did not do it to his satisfaction, he began massaging her to show her how he wanted it done. He then got on top of her and attempted to have sexual intercourse with her. The child cried, and he stopped his endeavor. The State conceded that it had not proven statutory rape. The trial judge agreed and did not allow the jury to consider this incident. The second incident, upon which a directed verdict was granted, occurred in August 1996. In that incident, Moses engaged in sexual intercourse with Child A in the hallway of his home for a brief period of time and attempted to have anal sex with her. She resisted his effort to accomplish anal sex. He then moved to the bedroom with her where he again engaged in sexual intercourse with the child. The State argued that Moses had committed two separate acts of sexual intercourse. The trial judge considered the incident one continuing incident and allowed only one charge of statutory rape to be considered by the jury.
¶ 16. The incident involving Child B, upon which a directed verdict was granted, occurred in June 1998. In that incident, Moses was massaging the child. He had been massaging her for a while before he stuck his finger in her vagina. The State argued that Moses had committed two offenses: sexual battery and fondling. The trial judge ruled that the battery charge, but not the fondling charge, could go to the jury.
¶ 17. We have thoroughly examined the record for the factual bases supporting the charges in the current indictment and find that they are totally different from the factual bases undergirding the charges in Moses I which were either disposed of by directed verdict granted by the trial judge or reversed and rendered by this Court.[4] Consequently, we find that Moses’s argument that he has been placed twice in jeopardy for the same offense lacks merit. The trial judge did not err in refusing to quash the indictment on the basis of double jeopardy.

(2) Amendment of the Indictment

¶ 18. Prior to trial, Moses filed a motion to quash the indictment based on the absence of the words “against the peace and dignity of the State.” In response, the State moved to amend the indictment and argued that its failure to include the language was an amendable defect as expressed by the court in Brandau v. State, 662 So.2d 1051 (Miss.1995). The trial judge agreed, found that the amendment was one of form and not of substance, and allowed the State to amend the indictment to include the language. Moses now argues that the indictment was fatally flawed since it did not contain the requisite statutory language, and contends that the trial court erred in allowing the State to amend the indictment.
¶ 19. The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review. Hawthorne v. State, 751 *736 So.2d 1090, 1092(¶ 8) (Miss.Ct.App.1999). Although Moses correctly asserts that the Mississippi Constitution requires that all indictments conclude with the words “against the peace and dignity of the State,” we note that our supreme court has held that the failure of an indictment to conclude with these words is a formal defect that is curable by amendment. Brandau, 662 So.2d at 1054. As a result, we find that the trial judge properly allowed the State to amend the indictment. Therefore, this issue is without merit.

(3) Motion for Mistrial

¶20. Moses next argues that the trial court erred in denying his motion for a mistrial when the State allegedly elicited testimony of other prior bad acts and disregarded the court’s ruling that the evidence would not be allowed. The State counters that any conceivable error in the court’s refusal to grant a mistrial would be harmless in light of the overwhelming evidence of Moses’s guilt.
¶ 21. The trial judge is in the best position to determine if an alleged objectionable remark has a prejudicial effect. Weeks v. State, 804 So.2d 980, 992(¶ 37) (Miss.2001). The judge is provided considerable discretion in determining whether the remark is so prejudicial that a mistrial should be declared. Id. However, if serious and irreparable damage has not occurred, then the trial judge should direct the jury to disregard the remark. Id. The failure of the court to grant a motion for mistrial will not be overturned on appeal unless the trial court abused its discretion. Bass v. State, 597 So.2d 182, 191 (Miss.1992).
¶ 22. Prior to trial, the State filed a notice of intent to introduce evidence of other sexual offenses committed by Moses against Child A and Child B. During a hearing on the motion to quash the indictment, the State asked for the judge’s ruling on whether it would be allowed to introduce the evidence of the other sexual offenses. The trial judge stated, “[W]ell, we’re not going to get into those. If it somehow flows into the testimony, then it might be that they would not — I would not declare a mistrial on that issue, but I want to try to avoid them if there’s any way we can. Just concentrate on just these particular ones that we have before us.” Shortly thereafter, during the prosecution’s direct examination of Child A, the following exchange occurred:
Q: Now, when Mr. Moses was having sexual intercourse with you, did it occur anywhere else other than at 618 Owens Street?
A: No, it did not.
Q: Did it occur only these times?
A: No, it did not.
Q: Did it occur more or less?
A: It occurred more times.
Q: All right. Thank you.
¶ 23. Moses moved for a mistrial. The judge overruled Moses’s motion for a mistrial, but asked Moses’s attorney “if he had anything that he wanted him [the judge] to say to the jury.” Defense counsel declined and stated that “[the defense didn’t] want the court to highlight too much.”
¶ 24. We find that the trial judge did not abuse his discretion in denying Moses’s request for a mistrial. Further, Moses’s attorney declined the judge’s attempt to cure any potential prejudice emanating from the remark. Consequently, this assignment of error is without merit.

(Ip) Weight and Sufficiency of the Evidence

¶ 25. Finally, Moses asserts that the verdict was against the weight and sufficiency of the evidence. He further asserts *737 that the trial judge erred in denying his motion for a directed verdict at the end of the State's ease and in denying his peremptory instruction at the conclusion of the case. Although Moses indicates in the caption to his issue that the verdict was against both the overwhelming weight and sufficiency of the evidence, the argument which he makes in support of the issue goes primarily to the sufficiency and not the weight of the evidence. Nevertheless, we will consider the sufficiency and weight of the evidence as separate matters.
¶ 26. “The standard of review for a denial of a directed verdict and peremptory instruction are identical.” Hawthorne v. State, 835 So.2d 14, 21(¶ 31) (Miss.2003). A motion for a directed verdict and request for a peremptory instruction challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). On the issue of legal sufficiency, reversal can only occur when evidence of one or more of the elements of the charged offense is such that “reasonable and fair-minded jurors could only find the accused not guilty.” Hawthorne, 835 So.2d at 21 (¶ 31).
¶27. We find that the State offered ample evidence in support of Moses’s conviction. The victims testified in great detail that Moses engaged in various sexual acts with them. The evidence further showed that when Moses was arrested, police found certain items in his home that corroborated the victims’ allegations. Therefore, accepting the evidence in the light most favorable to the State, the jury was justified in finding Moses guilty.
¶ 28. As distinguished from a motion for a directed verdict or a JNOV, a motion for a new trial asks to vacate the judgment on the grounds related to the weight of the evidence, not sufficiency of the evidence. Smith v. State, 802 So.2d 82, 85-86(¶ 11) (Miss.2001). Our standard of review for claims that a conviction is against the overwhelming weight of the evidence or that the trial court erred in not granting a motion for a new trial has been stated as follows:
[This Court] must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
Todd v. State, 806 So.2d 1086, 1090(¶ 11) (Miss.2001).
¶ 29. The record indicates that the facts and inferences strongly point toward Moses’s guilt. Considering the evidence presented by the State in support of Moses’s conviction and its substantial weight against Moses, we are not persuaded that the verdict is so contrary to the overwhelming weight of the evidence that allowing it to stand would sanction an unconscionable injustice. Consequently, we find the trial court did not abuse its discretion in denying Moses’s motion for a new trial.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY OF CONVICTION OF COUNTS TWO, THREE, FOUR, FIVE AND SIX: STATUTORY RAPE AND SENTENCE OF CONCURRENT LIFE SENTENCES ON EACH COUNT; COUNT SEVEN: SEXUAL BATTERY AND SENTENCE OF TWENTY YEARS WITH TEN YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, WITH THE SENTENCE FOR COUNT SEVEN RUNNING CONSECUTIVELY TO THE SENTENCES FOR COUNTS TWO, THREE, FOUR, FIVE, AND SIX; COUNTS EIGHT, NINE AND ELEVEN: FONDLING AND SEN *738 TENCE OF TEN YEARS WITH EIGHT YEARS SUSPENDED AND FIVE YEARS POST-RELEASE SUPERVISION ON EACH COUNT TO RUN CONCURRENTLY TO EACH OTHER BUT CONSECUTIVELY TO THE SENTENCE IN COUNT SEVEN, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MARION COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, AND BARNES, JJ., CONCUR.

. The victims in Moses I were referred to as Child A and Child B. In order to maintain clarity, we continue this designation in this case.

. Since what was designated as counts fourteen, fifteen, and twenty-two were not involved in the appeal in Moses 1, the dates of the alleged offenses comprising these counts were not mentioned in the Moses I opinion. However, we have examined the record in Moses I and find that the period of the alleged offenses comprising counts fourteen and fifteen was from June 1994 to September 1997.

. The mother will be referred to as BB. Although BB is Child A’s aunt, Child A referred to BB as her mother. In discussing the facts, we refer to BB as Child A did.

. Our examination does reveal that count one of the current indictment appears, from the time line given, to embrace one of the incidents upon which a directed verdict was granted in Moses I. However, the State voluntarily dismissed this count of the indictment, making moot any double jeopardy issue regarding this count. The State also dismissed count ten of the indictment. There is insufficient evidence in the record to determine whether this count correlates with any count in the Moses I indictment. However, count ten was a fondling count, and the dismissal of it left only three fondling counts. The Moses I indictment contained five fondling counts. The trial judge dismissed only one, and this Court, on appeal, did not reverse and render any of the fondling counts.