MYERS, J., for the Court:
¶ 1. Joseph Bennett was found guilty by a jury sitting before the Hinds County Circuit Court of one count of murder, four counts of aggravated assault, one count of shooting into an occupied dwelling, and one count of felon in possession of a firearm. Bennett appeals asserting four assignments of error, which we relate verbatim:
I. THE TRIAL COURT ERRED IN SUPPRESSING EVIDENCE OF OTHER WEAPONS OWNED BY THE VICTIM AND FOUND IN THE AREA, IMPEDING THE DEFENSE’S THEORY OF THE CASE.
II. THE INDICTMENT WAS FATALLY DEFECTIVE, AND THE TRIAL COURT ERRED IN ALLOWING THE STATE TO AMEND IT WITH A “PEN-CHANGE” DURING TRIAL.
III. THE TRIAL COURT ERRED IN ALLOWING HEARSAY EVIDENCE BEFORE THE JURY OVER THE OBJECTION OF THE DEFENDANT.
IV. THE TRIAL COURT IMPER-MISSIBLY ALLOWED PRIOR[-]BAD[-]ACTS EVIDENCE BEFORE THE JURY.
¶ 2. Finding no reversible error, we affirm Bennett’s convictions and sentences.
FACTS
¶ 3. On May 26, 2008, “Memorial Day,” approximately thirty people were hanging out at the house located at 302 Manship Street, Jackson, Mississippi. In the early part of the evening, an incident occurred between Melvin Parker, Terrance Lamp-kin, and Charlie Taylor. A friend of Parker’s, referred to in the record simply as “Trey,” handed Parker a paint-ball gun. Parker pointed the paint-ball gun at Lampkin, and Lampkin pushed Parker, causing the paint-ball gun to discharge, causing Parker to spill Taylor’s liquor. An argument ensued, and Taylor reportedly *740 said, “Y’all better be gone when I get back.... I’m going to clear this block.” Taylor then left the premises.
¶ 4. Thirty minutes later a green Grand Marquis and a black sports-utility vehicle (SUV) pulled up in front the 302 Manship residence. Inside the vehicles were Taylor; Randy Johnson; James Warren; Milton Michaels; and the defendant, Bennett.
¶ 5. Johnson, who was driving the Grand Marquis, called Lampkin over to the vehicle. Lampkin walked over and briefly spoke with Johnson. As Lampkin turned to walk away from Johnson’s vehicle, Bennett emerged from the backseat of the Grand Marquis with a semi-automatic rifle in his hands. Bennett reportedly exclaimed: “I’m sick of y’all n* * * * *s,” and he began firing the rifle at the 802 Manship residence.
¶ 6. Three bullets struck Cordarel Brown, killing him. Alexis England, Mar-tez Samuels, Lampkin, and Parker were also struck by bullets allegedly fired from Bennett’s rifle; each survived their injuries.
¶ 7. Investigators from the Jackson Police Department (JPD) were dispatched to the scene immediately following the shootings. They found, photographed, and retrieved eleven spent .223-caliber casings lying in the street fronting the 302 Man-ship residence. The weapon allegedly used in the shooting, which an expert later testified at trial was a “.223-caliber semiautomatic high-powered rifle,” was never recovered.
¶ 8. The following day, JPD Investigator Robert Bufkin, found and recovered a twelfth spent .223-caliber casing near where the eleven others were discovered on the night of the shootings. Investigator Bufkin also recovered a “SKS 7.62 mm assault rifle,” which somebody (the record does not disclose who) had discovered lying underneath an abandoned house at 320 Manship Street on the day after the shootings. The abandoned house is located immediately adjacent to the 302 Manship residence. Investigators later determined that none of the casings recovered from the crime scene were fired from the SKS rifle.
¶ 9. A couple of days after the shootings, Phyliss Adams, the owner of the 302 Man-ship residence, and who was not present at the time of the shootings, was allowed by investigators to return to her home. Upon entering her home, Adams discovered a .22-caliber handgun located “near her bedroom door.” Adams called the JPD, which retrieved the weapon sometime thereafter.
¶ 10. Prior to trial, the State filed a motion in limine to exclude any evidence relating to the discovery of the handgun recovered inside the 302 Manship residence, as well as the SKS rifle found underneath the house next door. The trial court initially reserved ruling on the State’s motion. Ultimately, however, neither weapon was allowed into evidence based on the trial court’s finding during the State’s case-in-chief that no adequate showing had been made as to either weapon’s relevancy to the case.
¶ 11. Bennett was the only person to testify on his behalf at trial. Bennett claimed that Michaels, not he, was the one who had fired the rifle at the 302 Manship residence that “Memorial Day” evening.
¶ 12. In recounting what had transpired immediately prior to the shootings, Bennett said he, Taylor, and Johnson drove over to 302 Manship in Johnson’s Grand Marquis so that Johnson could speak to Lampkin about what had occurred earlier with Taylor. Bennett said when they pulled up in front of the residence, he noticed an individual standing behind a tree with a gun in his hand. Bennett said Lampkin approached Johnson’s Grand Marquis and began conversing with Johnson. As Lampkin and Johnson were talking, a black SUV pulled up behind John *741 son’s vehicle. Bennett said Lampkin looked over at the SUV and then starting walking back toward the 302 Manship residence. Lampkin then hollered out, “Man, get my gun.” At that point, the individual behind the tree emerged. Bennett recognized the individual as Brown. Bennett said Brown walked toward Lampkin, who was then sitting on the porch steps, and handed Lampkin a gun, which Bennett indicated was a handgun. According to Bennett, Lampkin began acting “like he was fixing to point [the gun]” in the direction of Johnson’s vehicle. At that point, Michaels, who Bennett said went by the street name of “Hit Man,” got out of the black SUV and hollered out, “Man, don’t make no false moves like that. Don’t make no false moves.” According to Bennett, everybody began “spreading out,” and that is when the shooting started. Bennett said he immediately instructed Johnson to drive away, which Johnson did. Bennett told the jury that he did not have a weapon on him at the time, nor did anyone else in Johnson’s vehicle, and he claimed that he never left Johnson’s vehicle the entire time they were at 302 Man-ship.
¶ 13. The jury found Bennett guilty of murder, four counts of aggravated assault, shooting into an occupied dwelling, and felon in possession of a firearm. Bennett appeals his convictions. Additional facts, as necessary, will be related during our analysis of the issues.
ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN SUPPRESSING EVIDENCE OF OTHER WEAPONS OWNED BY THE VICTIM AND FOUND IN THE AREA, IMPEDING THE DEFENSE’S THEORY OF THE CASE.
¶ 14. “Relevancy and admissibility of evidence are largely within the discretion of the trial court, and reversal may be had only where that discretion has been abused.” White v. State, 742 So.2d 1126, 1134 (¶ 29) (Miss.1999). “[T]he trial court’s discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs.” Id.
¶ 15. Bennett contends that he announced early in the trial that he intended to assert a claim of self-defense to the charges set forth in his indictment. Bennett maintains that evidence existed in the case to support his self-defense claim, as there was evidence of a weapon present during the “spilled-drink” altercation and evidence of weapons found in the vicinity of Brown’s body after the shootings. Bennett argues that the trial court’s decision to exclude this evidence improperly denied him his theory of the case and necessitated the withdrawal of his self-defense instructions.
¶ 16. The State argues that what necessitated the withdrawal of the proposed self-defense instructions was the complete lack of evidence in support thereof. We agree.
¶ 17. A criminal defendant certainly is entitled to have his or her theory of the case presented to the jury. White v. State, 842 So.2d 565, 575 (¶ 30) (Miss.2003). But this legal principle is not limitless. Id. If there is no foundation in the evidence to support a particular defense theory, a proposed jury instruction setting forth that theory is properly refused. See Johnson v. State, 475 So.2d 1136, 1146-47 (Miss. 1985) (“[I]nstructions should not be given that are not applicable to the facts developed in the case during the trial.”).
¶ 18. According to the record, Bennett’s trial counsel, who is also Ben *742 nett’s appellate counsel, made numerous assertions to the trial court throughout the course of the State’s case-in-chief, all outside the presence of the jury, that Bennett was proceeding on the theory of self-defense. Yet trial counsel never informed the trial court what the particulars of Bennett’s self-defense theory entailed. When Bennett testified, Bennett did not present a factually or legally cognizable theory of self-defense; rather, he presented a defense based on the claim that he was not the shooter. According to the record, the proposed self-defense instructions that Bennett’s trial counsel withdrew were each predicated on the theory that Bennett, himself, had acted in self-defense. Based on the evidence in this case, had these instructions been submitted to the jury, it would have been error. Thus, contrary to counsel’s assertion on appeal, these particular proposed self-defense instructions were rightly withdrawn.
¶ 19. The trial court excluded the handgun found inside the 302 Manship residence and the SKS rifle found underneath the house located next door from being admitted into evidence. In Lanier v. State, 291 So.2d 695, 696 (Miss.1974), the Mississippi Supreme Court explained as follows:
As a general rule, any physical object of visual evidence may be introduced into evidence if the objects are relevant to the facts in issue before the court. (Wilkins v. State, 264 So.2d 411 (Miss. 1972)). Of course, it must be first shown that such objects and articles are in some manner relevant to the issue. (Underhill, Criminal Evidence (4th ed.) [sec.] 115, at 148 (1935)). The rule is more liberally construed in circumstantial cases. (29 Am. Jur. 2d Evidence [sec.] 266, at 315 (1967); 22A C.J.S.
Criminal Law [sec.] 637, at 499 (1961)). However, the mere finding of a rifle or other articles owned or in the possession of a defendant or deceased, wholly disconnected with the issue before the court, is properly excluded from the evidence before the jury. Strickland v. State, 269 So.2d 340 (Miss.1972); Gaston v. State, 239 Miss. 420, 123 So.2d 546 (1960); 22A C.J.S. Criminal Law [sec.] 637, at 496 (1961).
Id. at 696-97 (emphasis added).
¶ 20. Here, prior to Adams taking the witness stand for the State, Bennett’s trial counsel made a proffer of evidence to the trial court in an effort to introduce the handgun found by Adams into evidence based on the assertion that it was relevant to the issue of self-defense. In support of the proffer, Bennett’s trial counsel read into the record portions of a statement that Adams’s daughter, Philetta Adams, had made to one of the investigators assigned to the case. Philetta, who did not testify at trial, reportedly had stated as follows: “Then my mama found a gun by her room door. She asked whose gun it was, and I told her I didn’t know. She figured it must have been [Brown’s gun] because he was the only person back there.” The investigator asked Philetta: “Did you see anyone that [sic] shot at your house with a gun on the day of this shooting.” Philetta replied: “No. But earlier [Brown] said he had one. That was before everything had got [sic] started. I never seen [sic] him with it, but he said he had one.”
¶ 21. The trial court subsequently ruled that the handgun was inadmissible under Rules 401 and/or 403 of the Mississippi Rules of Evidence.[1] The trial court found *743 that the handgun was not relevant to the case because no evidence had been presented that Brown had a handgun on his person at the time of the shootings. The trial court further determined that any conclusion that Brown had this particular handgun on him at the time of the shootings, which was based solely on Adams’s assumption that it belonged to Brown, would be grounded on speculation.
¶ 22. Bennett contends this was error because the State had opened the door to the admission of the handgun when it asked “misleading questions” of its witness, Samuels. Bennett argues that because Samuels responded in the negative when asked by the State on redirect examination if Samuels ever saw Brown, England, or Parker with a gun that day, he had the right to counter Samuels’s claim with available competent evidence, that being Adams’s discovery of the handgun in her home.
¶ 23. We disagree. As the trial court found, Adams was not present at that time of the shootings, and she merely assumed that the handgun she found inside her home belonged to Brown. This is conjecture, not evidence. See, e.g., Lanier, 291 So.2d at 697.
¶ 24. Rule 103(a) of the Mississippi Rules of Evidence states: “[Ejrror may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and .... the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.” According to the record, when Bennett made his proffer, no evidence had been presented that Brown was armed at or around the time of the shootings. Even Adams’s daughter, Philetta, who, unlike Adams, was present when the shootings occurred, said in her statement that she never saw Brown with a gun. This, along with defense counsel’s empty assertion(s) that Bennett was claiming self-defense, is all that the trial court had to go on when it made its ruling.
¶ 25. As the State points out, the only probative evidence that Brown had a gun on him around the time of the shootings came from Bennett when he stated during direct examination that Brown handed a gun to Lampkin after Lampkin said, “Man, get my gun.” No attempt was made by the defense to revisit the issue of admissibility of the handgun in light of Bennett’s testimony that Brown had a gun.
¶ 26. For these reasons, we find no reversible error with the trial court’s decision to exclude the handgun from evidence.
¶27. As to the SKS rifle, Bennett’s trial counsel sought to have it admitted into evidence through Investigator Bufldn’s testimony. The trial court did not allow the SKS rifle to be admitted into evidence because, as with the handgun, no showing was made that the SKS rifle was used or visibly present at the time of the shootings.
¶ 28. Bennett, nevertheless, contends that the State opened the door to the SKS rifle’s admission. Bennett argues that at the time Investigator Bufkin found the twelfth casing lying on Manship Street the day after the shootings, Investigator Buf-kin had been dispatched to the scene by the JPD to recover the SKS rifle. Bennett, thus, maintains that he should have been allowed to present this fact to the *744 jury, particularly since the State asked Investigator Bufkin if finding the twelfth casing was the extent of his investigation.
¶ 29. Again, we disagree. Investigators determined that neither the bullets nor the casings recovered from the crime scene came from the SKS rifle. And no one, not even Bennett, testified that the SKS rifle was visibly present at the time of the shootings. As far as this record is concerned, the SKS rifle bore no connection with the case at hand. See, e.g., Lanier, 291 So.2d at 697. The Mississippi Supreme Court has definitively held that “it is ‘error to allow a witness to be contradicted on an immaterial (or collateral) matter.’ ” Croft v. State, 992 So.2d 1151, 1156 (¶ 21) (Miss.2008) (quoting Johnson v. State, 655 So.2d 37, 41 (Miss.1995)). Injecting evidence of the SKS rifle into the case would have served no purpose other than to confuse the jury. Id. Accordingly, we find no error with the trial court’s decision to exclude the SKS rifle from evidence.
¶ 30. We find no merit to this issue.
II. WHETHER THE INDICTMENT WAS FATALLY DEFECTIVE, AND THE TRIAL COURT ERRED IN ALLOWING THE STATE TO AMEND IT WITH A “PEN-CHANGE” DURING TRIAL.
¶ 31. The question of whether an indictment is defective is an issue of law, which we review de novo. Spearman v. State, 58 So.3d 30, 35 (¶ 16) (Miss.Ct.App. 2011).
¶ 32. Bennett contends that the seventh count of his indictment, which alleged that he was a felon in possession of a firearm, was defective because it: (1) contained no date of the offense, (2) set out an incorrect statute number,[2] and (3) failed to conclude with the phrase “against the peace and dignity of the State of Mississippi.” Bennett argues that he brought these defects to the trial court’s attention by way of demurrer, but the trial court dismissed these defects as “scrivener’s errors,” and allowed the State to cure the defects with a “pen change.”
¶ 33. We find no error with the trial court’s decision to allow the State to amend Bennett’s indictment. Uniform Rule of Circuit and County Court 7.09 provides, in pertinent part, that: “All indictments may be amended as to form but not as to the substance of the offense charged.Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.”
¶ 34. An amendment to correct the date the crime occurred is one of form, unless time is an essential factor or element. Grayer v. State, 928 So.2d 905, 911 (¶ 14) (Miss.Ct.App.2006). Bennett never asserted that time was an essential factor or element with the crime charged in count seven. As the trial court found, the other six counts included the date the alleged offense occurred. This provided a sufficient basis for Bennett to know that he was accused of having possessed a firearm on the same day he was alleged to have committed the other offenses. Thus, we find that the amendment to the indictment to include the date of the alleged offense of felon in possession of a firearm was one of form and did not unfairly prejudice Bennett.
¶ 35. Amendments to correct errors in citations to statutes are likewise permissible. This Court has held that *745 when an indictment provides a clear and concise statement of the elements of the crime charged, citation to a wrong statute number is “merely surplusage and not prejudicial to the defendant.” Amos v. State, 44 So.3d 1058, 1059-60 (¶ 10) (Miss. Ct.App.2010) (citing Evans v. State, 916 So.2d 550, 552 (¶ 6) (Miss.Ct.App.2005)). Review of Bennett’s original indictment shows that count seven set forth that Bennett “willfully, unlawfully, feloniously, and knowingly [had] in his possession a certain firearm, to wit: a Rifle.” It then listed two felony offenses for which Bennett had been previously convicted, including the jurisdiction where each conviction was obtained, the cause number for each conviction, and each conviction’s date of judgment. This clearly and fairly informed Bennett of the elements of the offense he was alleged to have violated.
¶ 36. Lastly, the failure to include the phrase, against the peace and dignity of the State of Mississippi, was a defect of form. Moses v. State, 885 So.2d 730, 736 (¶ 19) (Miss.Ct.App.2004) (citing Brandan v. State, 662 So.2d 1051, 1054 (Miss.1995)). The State filed a written motion in the trial court prior to trial to include the phrase. The trial court granted the motion, and we find that Bennett was not unfairly prejudiced as a result.
¶ 37. This issue is without merit.
III. WHETHER THE TRIAL COURT ERRED IN ALLOWING HEARSAY EVIDENCE BEFORE THE JURY OVER THE OBJECTION OF THE DEFENDANT.
¶ 38. Bennett argues that the trial court allowed the State to elicit testimony from Beatrice Blocker in front of the jury that she was on Oakley Street in Jackson, Mississippi, on May 26, 2008, and witnessed Johnson pull up in a green car, and ask for a gun. Blocker testified that Warren responded to Johnson by saying: “I’m not fixing to get in there. I don’t have no pistol.” Blocker then stated that she heard Bennett say, “I got a gun,” at which point Bennett retrieved a “long assault rifle” and left with Johnson.
,¶ 39. Bennett maintains that he objected to the statements as hearsay, which the trial court overruled, based on the State’s argument that the statements were “co-conspirator statements,” admissible as non-hearsay under Rule 801(d)(2)(E) of the Mississippi Rules of Evidence. Bennett contends that the State failed to meet the preliminary requirement of establishing a conspiracy at the predicate hearing, as prescribed by Rule 104 of the Mississippi Rules of Evidence, held prior to Blocker’s testimony in front of the jury. Bennett also submits that the trial court erroneously allowed the State to ask Blocker leading questions during the hearing.
¶ 40. We first address Bennett’s contention that the State was allowed to “ask Blocker leading questions” during the Rule 104 predicate hearing. The trial court allowed the State to examine Blocker outside the presence of the jury in order to determine the admissibility of what Blocker had heard and seen while she was on Oakley Street. Bennett submits that the question asked by the State, “Did you hear [Johnson] ask [Warren] for weapons,” was a leading question, which improperly refreshed Blocker’s memory. Bennett acknowledges on appeal that no objection was entered following the State’s question. But he contends this is because the trial court had told his defense counsel to be quiet after counsel had attempted to interpose an objection while the State was in the process of phrasing its question to Blocker.
*746 ¶ 41. Rule 611(c) of the Mississippi Rules of Evidence generally prohibits leading questions and states: “Leading questions should not be used on the direct examination of a witness except as may be necessary to develop [the witness’s] testimony.” Rule 1101(b)(1) of the Mississippi Rules of Evidence, however, provides that the rules of evidence do not apply to Rule 104 predicate hearings. This being a Rule 104 predicate hearing where the complained of question occurred, we see no need to delve into the strictures of Rule 611(c). Suffice it to say, we find Bennett’s contention meritless.
¶ 42. For the sake of thoroughness, we point out that before the State had propounded this particular question to Blocker, Blocker had already testified fully as to her recollection of what she had witnessed on Oakley Street that “Memorial Day.” And she did so without any assistance from the State. The complained of question came at the end of Blocker’s examination, when the State, apparently, was attempting to sum up most of what Blocker had previously stated. Blocker’s answer to the complained of question was consistent with her previous testimony.
¶ 48. We now address the crux of the issue presented: whether the trial court erroneously allowed hearsay statements to go before the jury. At the outset, we decline to enter into a discussion as to whether the complained of statements were admissible under Rule 801(d)(2)(E), which excludes from the definition of hearsay any out-of-court statement offered against a party that was made “by a co-conspirator of [the] party during the course and furtherance of the conspiracy.” See M.R.E. 801(d)(2)(E). First, it is unnecessary for us to do so because, as will be explained, we find that each complained of statement was admissible as non-hearsay, separate and apart from Rule 801(d)(2)(E). Secondly, it is not entirely clear to us whether the trial court allowed the statements in exclusively under Rule 801(d)(2)(E). Had the trial court done so, it would have been error, for one of the statements (that made by Warren) clearly was not a statement made by a co-conspirator. Such error, however, would be harmless, since the statement was nonetheless admissible. Therefore, we limit our discussion of this issue to that which we find to be certain.
¶ 44. Blocker testified at the Rule 104 predicate hearing that she was standing on Oakley Street with Bennett, Warren, and Michaels, when Johnson pulled up in a green car. Blocker stated that Johnson got out of the car and said, “Can I holler at you, [Warren]? ... I got into it with some guys and I need a pistol.” Blocker said that Warren replied, “I don’t have a pistol.... I ain’t fixing to get in it.” According to Blocker, Bennett interjected at that point and said, “I got a gun.” She said Bennett then went behind a house and retrieved a long rifle, he then got in the car with Johnson, and they drove off. Blocker said she saw Bennett approximately thirty to forty minutes later, and he “was real nervous.” Blocker stated that she heard Bennett say that he thought he had killed somebody.
¶ 45. Rule 801(c) of the Mississippi Rules of Evidence defines hearsay as “a statement, other than the one made by the declarant while testifying ... offered in evidence to prove the truth of the matter asserted.” Blocker’s testimony about what Johnson had requested explained Bennett’s actions of retrieving a rifle and then driving away with Johnson. Generally, an out-of-court statement offered to show its effect on the listener is relevant non-hearsay, as it is not offered to prove the truth of the matter of asserted. *747 Knight v. State, 601 So.2d 403, 406 (Miss. 1992).
¶ 46. Both Johnson’s statement and Warren’s statement were admissible for the fact each was said. Id. And Bennett’s statement, of course, qualified as non-hearsay under Rule 801(d)(2)(A) of Mississippi Rules of Evidence.
¶ 47. Accordingly, we find no reversible error with the trial court’s decision to allow Blocker to relate what she allegedly heard and observed to the jury, which the record illustrates was consistent with the testimony she provided at the Rule 104 predicate hearing.
¶ 48. This issue is without merit.
IY. WHETHER THE TRIAL COURT IMPERMISSIBLY ALLOWED PRIOR-BAD-ACTS EVIDENCE BEFORE THE JURY.
¶ 49. During Parker’s direct examination, the State asked Parker if he had any problems with Bennett prior to the alleged shootings. Parker replied that Bennett had shot at him a couple of months prior. Bennett’s trial counsel objected on the ground of relevance. The State responded that the prior shooting incident went to motive. A bench conference was subsequently held off the record, and the trial court thereafter overruled the objection.
¶ 50. Parker continued with his testimony. Parker related that a couple months prior to the shootings at issue, a vehicle in which Bennett was riding attempted to run him over. Afterwards, the vehicle stopped in the road, and Bennett got out of the vehicle brandishing a gun. Bennett laid the gun on the ground and challenged Parker to a fight, to which Parker declined. Parker said a couple of minutes later the same vehicle drove back by, and Bennett began shooting at him. Parker stated that he immediately went to the police station and filed a complaint against Bennett.
¶ 51. During Bennett’s cross-examination, Bennett denied having ever shot at Parker. Following the defense’s case-in-chief, the State called Officer Sharonda Barnes as a rebuttal witness. Bennett entered no objection to Officer Barnes as a witness.
¶ 52. Officer Barnes testified that on January 8, 2008, Parker filed a complaint against Bennett. Officer Barnes stated that Parker claimed that Bennett had shot at him twice and chased him to “Court Services.” Officer Barnes wrote out a police report for Parker, describing the details of the alleged incident according to Parker. The police report was entered into evidence without any objection from Bennett. On cross-examination, Officer Barnes stated that there had been no conviction with regard to the alleged January 8 incident.
¶ 53. Bennett argues on appeal that the State introduced prior-bad-act evidence without providing proper notice. Bennett contends that prior to trial, he filed a motion for discovery, in which he had requested any and all evidence under Rule 404(b) of the Mississippi Rules of Evidence that the State intended to introduce at trial, to which the State provided no specific response. Bennett further contends that no Rule 403 balancing analysis was conducted on the record, and the trial court abused its discretion in allowing this highly prejudicial evidence before the jury. Bennett acknowledges that no objection was made to the State’s rebuttal witness being called to testify, but he contends this was due to the trial court’s previous ruling and his defense counsel’s tactical decision to demonstrate to the jury that the complaint made by Parker did not result in a conviction.
*748 ¶ 54. As the State points out, Bennett did not object to the prior-bad-act evidence on the ground of a discovery violation; rather, he objected that the evidence was inadmissible because it was not relevant. “An objection on one specific ground waives all other grounds.” Swington v. State, 742 So.2d 1106, 1110 (¶ 9) (Miss.1999) (citing Doss v. State, 709 So.2d 369, 387 (Miss.1996)). In Swington, the supreme court reiterated the necessity of this rule, explaining as follows:
There are three basic considerations which underlie the rule regarding specific objections. It avoids costly new trials. Boring v. State, 253 So.2d 251 (Miss.1971). It allows the offering party an opportunity to obviate the objection. Heard v. State, 59 Miss. 545 [ (1882) ]. Lastly, a trial court is not put in error unless it had an opportunity to pass on the question. Boutwell v. State, 165 Miss. 16, 143 So. 479 (1932).
Id. (quoting Oates v. State, 421 So.2d 1025, 1030 (Miss.1982)). Accordingly, we find that Bennett is procedurally barred from asserting a discovery violation for the first time on appeal.
¶ 55. Rule 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
¶ 56. Evidence deemed admissible pursuant to the exceptions found in Rule 404(b), is still subject to the prejudice test of Rule 403. Jones v. State, 920 So.2d 465, 475 (¶ 32) (Miss.2006). “[J]ust as with any evidence otherwise admissible under any other evidentiary rule, evidence which is deemed admissible pursuant to 404(b) may still be excluded if its probative value is substantially out weighed by the danger of its resultant unfair prejudice.” Id.
¶ 57. In Jones, the defendant claimed his due-process rights were violated when the trial court failed to make an on-the-record Rule 403 balancing analysis in determining that Rule 404(b) evidence was admissible. The Jones court responded, stating: “the weighing and balancing task required by Rule 403 is not one susceptible of mechanical performance as it asks only that a judge rely on his/her own sound judgment.” Id. at 476 (¶ 33) (citing Jenkins v. State, 507 So.2d 89, 93 (Miss.1987)). The supreme court held:
[W]hile we clearly interpret the rules of evidence as requiring that all otherwise admissible evidence be “filtered” through the balancing test set forth in Rule 403, we do not interpret this requirement to be a regimented procedure that must be explicitly performed on pain of reversal. Though this Court certainly expects trial judges to have considered Rule 403 in making their evi-dentiary rulings, we certainly do not predicate the soundness of these determinations on the express use of magic words.... It follows that our review depends on the evidence and not the judge, and while a judge’s on-the-record analysis is recommended as it serves to fortify the judge’s position for purposes of review, the lack of such analysis is harmless unless we deem the evidence to be patently prejudicial.
Id. at (¶ 34).
¶ 58. Here, the trial court did not perform an on-the-record Rule 403 analysis before overruling Bennett’s objection to this prior-bad-act evidence going before the jury. Nevertheless, we find the trial court’s failure to do so was harmless error, as we cannot say that the prior-bad-aet *749 evidence presented to the jury was manifestly prejudicial to Bennett.
¶ 59. The prior shooting incident that Parker claimed occurred on January 8 was admissible under Rule 404(b), as it both showed a possible motive and indicated intent on the part of Bennett for the crimes he had allegedly committed on May 26, 2008.
¶ 60. In Webster v. State, 755 So.2d 451, 457 (¶ 12) (Miss.Ct.App.1999), reversed in part on other grounds, Webster v. State, 754 So.2d 1282, 1236 (¶ 11) (Miss.2000), the defendant argued that testimony regarding a fight that took place approximately one year earlier between him and the murder victim should not have been admitted by the trial court because the event was too remote in time. This Court found no abuse of discretion on the part of the trial court in allowing this evidence to go before the jury because it showed a possible motive and indicated intent on the part of the defendant for the crime he allegedly later committed. Webster, 755 So.2d at 459 (¶ 16). The supreme court expressly upheld our ruling on this issue when it later heard the case on certiorari. Webster, 754 So.2d at 1238-89 (¶ 16).
¶ 61. As for the evidence presented by the State in its rebuttal case, no objection was made to that evidence going before the jury. Consequently, Bennett may not be heard on this appeal to complain of any error created thereby. Swington, 742 So.2d at 1110 (¶ 9).
¶ 62. For these reasons, we find this issue is without merit.
V. WHETHER CUMULATIVE ERROR REQUIRES REVERSAL.
¶ 63. Bennett failed to list this assignment of error in his original statement of issues, as is required by Rule 28(a)(3) of the Mississippi Rules of Appellate Procedure. Accordingly, we find that this issue is not properly before the Court. Reed v. State, 987 So.2d 1054, 1056-57 (¶ 8) (Miss. Ct.App.2008). Therefore, this issue is procedurally barred.
¶ 64. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, MURDER, AND SENTENCE OF LIFE; COUNTS II-V, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS ON EACH COUNT; COUNT VI, SHOOTING INTO AN OCCUPIED DWELLING, AND SENTENCE OF TEN YEARS; COUNT VII, CONVICTED FELON IN POSSESSION OF A FIREARM, AND SENTENCE OF TEN YEARS, WITH THE SENTENCES IN COUNTS II-VII TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND RUSSELL, JJ„ CONCUR. MAXWELL, J., CONCURS IN RESULT ONLY.

. Rule 401 states: " 'Relevant Evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action *743 more probable or less probable than it would be without the evidence.” M.R.E. 401. Rule 403 states in part: "Although relevant, evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury_" M.R.E. 403.

. Count seven erroneously cited to Mississippi Code Annotated section 97-37-29 (Rev.2006), which criminalizes shooting into an occupied dwelling.