# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-KA-00437-COA

**BREONNA GWIN**                                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                **APPELLEE**

DATE OF JUDGMENT:                 12/12/2024
TRIAL JUDGE:                       HON. BURNICE WESLEY CURRY IV
COURT FROM WHICH APPEALED:   FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                                   BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                                   BY: JULIANNE KAY BAILEY
DISTRICT ATTORNEY:             EARL LINDSAY CARTER JR.
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                      AFFIRMED - 06/23/2026
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McDONALD AND WEDDLE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     A Forrest County grand jury indicted Breonna Gwin for two counts of simple assault of a law enforcement officer.[1] These charges resulted from an incident where she struck two police officers when Forrest County Child Protection Services (CPS) took her children into CPS custody.

¶2.     After a jury trial, Gwin was found guilty of both counts. The trial court sentenced Gwin to serve consecutive five-year sentences in the custody of the Mississippi Department

---

[1] *See* Miss. Code Ann. § 97-3-7(1)(b) (Rev. 2020) (providing that a person who "attempts to cause or purposely, knowingly or recklessly causes bodily injury" to a law enforcement officer "shall be punished by a fine of not more than One Thousand Dollars ($1,000.00) or by imprisonment for not more than five (5) years, or both.").

of Corrections (MDOC) on each count, but the court suspended the sentence on the second count and ordered that she be placed on five years of post-release supervision (PRS). After the trial court denied Gwin's posttrial motion, she appealed her convictions and sentences. We find no error and affirm.

## Factual and Procedural History

¶3. Gwin was a twenty-eight-year-old single mother of twin baby girls. Valerie Mackey, a Forrest County CPS social service specialist who had been assisting Gwin, visited Gwin's home on October 23, 2023. Mackey asked Gwin to come to the local CPS office later that day to fill out paperwork. Mackey then contacted Youth Court Judge Carol Jones Russell to implement a safety plan that would allow Gwin's minor children to stay in the home with Gwin and her mother rather than enter CPS custody.

¶4. When Gwin failed to appear for the meeting, Mackey and her supervisor returned to Gwin's home. When they arrived, Mackey observed Gwin's mother, Alicia Gwin, holding a knife and Gwin coming downstairs, also holding a knife. Mackey immediately "disregarded the safety plan" and contacted the youth court judge to request that CPS be granted custody of Gwin's children. She also called 911 for police assistance to ensure the children's safety.

¶5. Officers Colin Conner and Tyler Cone with the Hattiesburg Police Department arrived at the scene, along with other officers. They observed Gwin and a CPS worker sitting outside, each holding one of Gwin's infants. An officer went inside the house to speak with Alicia, who informed him that Gwin suffered from schizophrenia but had not been compliant

2

with her medication. When she told them Gwin had hit her, they checked for signs of injury.

¶6.     Officers went outside to speak with Gwin. The CPS worker took the infant from Gwin's arms while officers obtained Gwin's side of the story. Gwin denied having any mental health issues. She admitted to "pull[ing] a weapon" on Alicia but insisted that it was the first time she had ever done so. Gwin acknowledged that she had hit Alicia in the head. Although she was initially cooperative with the officer's questioning, Gwin angrily exploded when the CPS worker explained to her that the youth court judge had granted CPS custody of her children. Gwin slammed her fists down on a parked car and started swinging her arms with closed fists, striking Officer Conner in the mouth. During this outburst, Gwin kept pleading for CPS not to take her babies.

¶7.     Eventually, officers were able to handcuff Gwin and place her in a police car. Moments later, however, Gwin smashed the glass out of the car's rear window and leapt out, with the handcuffs hanging loosely from her right wrist. When Officer Cone tried to intercede, she hit him with the loose handcuffs, slicing his cheek and ear. Officers again handcuffed Gwin, and she was taken into custody. Officer Cone was taken to the hospital for treatment and received six stitches in his left ear.

¶8.     On February 29, 2024, Gwin was charged with two counts of simple assault of a law enforcement officer under Mississippi Code Annotated section 97-3-7(1)(b). A jury trial was held on October 14-15, 2024. Mackey testified that after talking with the youth court judge, she and other CPS workers went to Gwin's residence to speak with her "about the safety plan and get her to sign off on the paperwork." When they arrived, however, Mackey saw Alicia

3

holding a knife and then saw Gwin "exiting down the stairs holding a knife." Mackey also observed Gwin slap Alicia in the back of the head with the palm of her hand. After the police arrived, CPS took the children and left.

¶9. During cross-examination, Mackey testified that until this incident, Gwin had been compliant with CPS's requirements. Mackey also confirmed her prior testimony that Alicia had a knife. On redirect, over a hearsay objection by defense counsel, Mackey testified that Alicia said Gwin was trying to stab her.

¶10. Officer Conner's body-camera and dash-camera footage of the incident was admitted into evidence and played for the jury. Officer Conner testified that Gwin hit him in the mouth with her closed fist while she was swinging her arms. He did not sustain any bodily injury from the hit, but Gwin did knock off his body camera. He confirmed that Gwin was not under arrest at that time. Regarding the footage from his dash camera, Officer Conner noted that Gwin "jump[ed] out of the back window" of a patrol car. He also observed that "Gwin slices or goes to swing at Officer Tyler Cone, misses his face, and the open handcuff, the serrated edges slice the back of Officer Cone's left ear." When asked on cross-examination why he did not immediately arrest Gwin for the misdemeanor, Officer Conner replied that he had "compassion that this is a difficult situation for Ms. Gwin."

¶11. Officer Tyler Cone also testified. Viewing his body-camera video, Officer Cone acknowledged that the handcuff sliced his face, that he received six stitches in his ear, and that he has permanent scarring on his ear and cheek from the injury. Officer Cone also noted that when Gwin was swinging at Officer Conner, she was not under arrest.

4

¶12.    After both the State and the defense rested, the jury found Gwin guilty of both counts. On December 12, 2024, the trial court sentenced Gwin to serve five years in the custody of the MDOC on each count, with the sentences to run consecutively to each other. The trial court also suspended the sentence on the second count and ordered she be placed on five years of PRS after serving five years.[2] Gwin filed a posttrial motion challenging the sufficiency and weight of the evidence, which the trial court denied.

¶13.    Gwin appeals, arguing that (1) hearsay evidence prejudiced her defense; (2) the trial court improperly limited her cross-examination of a witness; and (3) the verdict was against the overwhelming weight of the evidence.

## Discussion

### I.    Whether hearsay evidence prejudiced Gwin's defense.

¶14.    During Mackey's testimony, she was asked about her observations during the altercation between Gwin and Alicia.

| | |
|---|---|
| [MACKEY]: | I saw her mother, Ms. Alicia Gwin, holding a knife yelling out to me that – |
| [DEFENSE]: | Objection to hearsay, Your Honor. |
| [STATE]: | Your Honor, we would submit that this is an excited utterance. This is an event that I believe with Ms. Mackey's anticipated testimony, she's going to describe an event wherein Ms. Alicia Gwin was under a great deal of excitement and was describing what had happened and what was happening. |

---

[2] Gwin was also ordered to pay all costs of court, a $500 fine, a $200 assessment to the Mississippi Crime Victims Compensation Program, and restitution in the amount of $500 to the Forrest County Public Defender's Fund.

. . . .

THE COURT:    All right.  The Court is going to sustain the objection.

On cross-examination, defense counsel asked if it was Alicia who held the knife, and Mackey stated, "She was coming out of the house with a knife, yes."

¶15.    On redirect, the State focused "on that knife and Ms. Alicia Gwin question" and asked Mackey if she knew why Alicia had the knife.  Defense counsel preemptively objected on the basis of hearsay.  The State responded:

[STATE]:    Your Honor, in this particular instance, we are clarifying a topic that was drawn out by defense on cross-examination and telling a complete story, which we tender is not offered for the truth of the matter asserted, and does not touch upon an ultimate issue in this case, but is offered to show its effect on the listener, being Ms. Mackey, and further illuminates why she felt it necessary to call 911.

THE COURT:    Response?

[DEFENSE]:    Your Honor, it's going to require her to speculate other than just being able to testify as to what she saw.  And I just want to clarify that her testimony is what she saw and that's all.

[STATE]:    Your Honor, we are not offering it to prove the truth of the matter asserted, which is a prerequisite for hearsay. We are offering it to show its effect on the listener, Ms. Mackey.

THE COURT:    I'm going to allow it.

[STATE]:    Ms. Mackey, were you told why Ms. Alicia Gwin was holding a knife?

[MACKEY]:    She said that her daughter was trying to stab her – Ms. Breonna [Gwin].

6

Gwin argues that the trial court's allowing this questioning and testimony was error, as "[t]he introduction of [this] objectionable testimony" was prejudicial and "violated her right to a fair trial under the Sixth and Fourteenth Amendments . . . and Article 3 § 26 of the Mississippi Constitution."

¶16. The Mississippi Supreme Court has held, "We review a trial court's decision to admit potential hearsay testimony for abuse of discretion." *McCollum v. State*, 372 So. 3d 980, 985 (¶15) (Miss. 2023) (citing *Eubanks v. State*, 291 So. 3d 309, 322 (¶47) (Miss. 2020)). Mississippi Rule of Evidence 801(c) defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." M.R.E. 801(c)(1)-(2).

¶17. The State contends that Mackey's statement was not hearsay, as it was "not offered to prove the truth of the matter asserted." We agree and find no error in the trial court's ruling. "Generally, an out-of-court statement offered to show its effect on the listener is relevant non-hearsay, as it is not offered to prove the truth of the matter . . . asserted." *Bennett v. State*, 76 So. 3d 736, 746-47 (¶45) (Miss. Ct. App. 2011) (citing *Knight v. State*, 601 So. 2d 403, 406 (Miss. 1992)). Here, it was partly the result of Alicia's statement that Mackey determined that the children should be taken into CPS custody. That decision precipitated Gwin's assault of Officers Cone and Conner. The statement was not hearsay and was properly admitted.

¶18. We therefore find no abuse of discretion in the court's decision to allow this testimony.

## II. Whether the trial court improperly limited the defense's cross-examination of Officer Conner.

¶19. During Officer Conner's cross-examination, defense counsel asked him if he thought Gwin "did everything she could to resist being arrested." The trial court sustained an objection from the prosecutor on the basis that the question called for a legal conclusion. Gwin argues that the court's limiting the cross-examination of Officer Conner impacted her ability "to present evidence which would foster inferences in support of defenses that she asserted."

¶20. In *Mohamed v. State*, 323 So. 3d 532 (Miss. Ct. App. 2021), we described this Court's standard of review regarding the right to cross-examination:

> We recognize that "[t]he right to cross-examination is secured by the confrontation clause of the Sixth Amendment to the Constitution of the United States, made enforceable against the states by the Fourteenth Amendment." *Farmer v. State*, 301 So. 3d 731, 734 [(¶12)] (Miss. Ct. App. 2020). "While defense counsel has wide latitude in cross-examination, 'the trial court in its discretion has the inherent power to limit cross-examination to relevant matters.'" *Id*. (quoting *Mixon v. State*, 794 So. 2d 1007, 1013 (¶20) (Miss. 2001)); *see also Mitchell v. State*, 792 So. 2d 192, 217 (¶97) (Miss. 2001) ("M.R.E. 611(b) allows wide-open cross-examination so long as the matter probed is relevant."). We review a circuit court's limitation of cross-examination due to relevancy for an abuse of discretion. *Id*. (citing *Zoerner v. State*, 725 So. 2d 811, 813 (¶7) (Miss. 1998)).

*Id*. at 546 (¶39). However, "a defendant's right to cross-examination is not unlimited, and the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Williams v. State*, 281 So. 3d 263, 268 (¶14) (Miss. Ct. App. 2019). "Ultimately, determining whether the trial court abused its discretion in limiting

cross-examination necessitates 'careful reflection upon the nature and purpose of the question propounded.'" *Jackson v. State*, 245 So. 3d 433, 440 (¶37) (Miss. 2018) (quoting *Black v. State*, 506 So. 2d 264, 267 (Miss. 1987)).

¶21. The State asserts that the trial court did not improperly limit Gwin's cross-examination, noting the following exchange after the trial court sustained the State's objection:

| [DEFENSE]: | [Gwin] refused to cooperate with you putting the handcuffs on her? |
|---|---|
| [OFFICER CONNER]: | Correct. |
| [DEFENSE]: | She didn't want to stand up? |
| [OFFICER CONNER]: | Correct. |
| [DEFENSE]: | Y'all carried her to the car? |
| [OFFICER CONNER]: | Correct. |
| [DEFENSE]: | She got out of the handcuffs? |
| [OFFICER CONNER]: | Correct. |
| [DEFENSE]: | And busted out a window to climb out to try to get back to her kids? |
| [OFFICER CONNER]: | Yes. |

Based on this exchange, we agree with the State's contention that Gwin's defense attorney "was still able to elicit all of the information she sought to introduce to the jury and to bolster her theory of defense that she was merely guilty of the lesser-included charge of resisting arrest." Further, as defense counsel did not make a proffer of the proposed testimony that

she wished to bring out, she has waived this issue. "When a trial court rules so as to prevent certain testimony from being introduced, it is incumbent on the party to make a proffer of what the witness would have testified to or the point is waived for appellate review." *Turner v. State*, 732 So. 2d 937, 951 (¶55) (Miss. 1999).

¶22. The State alternatively asserts that any error would be harmless. In *Ambrose v. State*, 254 So. 3d 77, 98, 105 (¶¶41, 69-71) (Miss. 2018), the Mississippi Supreme Court held that the trial court's ruling to prevent the defense from questioning a witness about his criminal past was harmless error because the State had proved that the defendant "was guilty beyond a reasonable doubt." To determine whether an error is harmless, we evaluate several factors including "the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* at 105 (¶70) (quoting *Clark v. State*, 891 So. 2d 136, 142 (¶29) (Miss. 2004)).

¶23. Here, both officers testified that Gwin had struck each of them during her attempt to prevent CPS from taking her children, and their body-camera footage corroborated this testimony. And as already noted, after the trial court sustained the objection, defense counsel was permitted to ask Officer Conner about Gwin's lack of cooperation when being restrained. Accordingly, we find that the trial court's ruling was not reversible error.

### III. Whether the verdict was contrary to the overwhelming weight of the evidence.

¶24. In her posttrial motion, Gwin asserted that the jury's verdict was "against the

10

overwhelming weight of the evidence presented at trial." She reasserts this claim on appeal, arguing that with regard to Count I, "the greater weight of the evidence showed that" Officer Conner accidentally walked into Gwin's flailing arms and fists while she was "trying to prevent the CPS workers from taking her children when she had never been shown any proof that the CPS workers were authorized to do so." Thus, she claims, "The weight of evidence proves a case of accidental striking, disorderly conduct or resisting arrest rather than assault or attempted assault on Conner." As for Count II, she argues that "the overwhelming weight of the proof showed that Gwin did not purposely, knowingly or recklessly cause injury to [Officer] Cone." Rather, Gwin asserts that the evidence established that she "was trying to get to her children" and that "[Officer] Cone was injured when he tried to interfere."

¶25.    The supreme court has held that "[i]n reviewing a challenge to the weight of the evidence, we must 'view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Williams v. State*, 426 So. 3d 1087, 1090 (¶14) (Miss. 2026) (quoting *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017)). We do not "reweigh evidence, assess witness credibility, or resolve factual disputes." *Id*. (citing *Little*, 233 So. 3d at 289 (¶1)).

¶26.    Regarding Count I, as stated in the jury instructions, the State was required to prove beyond a reasonable doubt that "Gwin knowingly and unlawfully attempted to cause bodily injury to Colin Conner . . . by striking him in the face with her hand." The evidence and testimony clearly demonstrated that when Officer Conner tried to calm Gwin down, she

struck him with a closed fist and knocked off his body camera. Furthermore, Officer Conner confirmed that Gwin was not being placed under arrest at that time.

¶27. Likewise, with regard to Count II, the jury viewed the body-camera footage from both officers, as well as the dash-camera footage from Officer Conner's patrol car. This video footage showed Gwin smash out the window of the patrol car, leap out with the handcuffs dangling, and swing her arm at Officer Cone, striking him with the loose handcuff. Photos of the lacerations to Officer Cone's face were admitted, and Officer Cone testified that he was permanently scarred as a result of Gwin's striking him with the handcuff.

¶28. Viewing the evidence in the light most favorable to the verdict, we cannot find that the jury's determination that Gwin was guilty of both counts was against the overwhelming weight of the evidence. We affirm Gwin's convictions and sentences.

¶29. **AFFIRMED.**

**CARLTON, P.J., McDONALD, LAWRENCE, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., McCARTY AND EMFINGER, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

12